REVISED August 13, 2007

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

**June 27, 2007**

Charles R. Fulbruge III
Clerk

No. 06-20619

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

FRANCISCO CORPUS; MARIA CASTILLO

Movants - Appellants

Appeal from the United States District Court
for the Southern District of Texas, Houston

Before KING, DAVIS, and BARKSDALE, Circuit Judges.

KING, Circuit Judge:

Movants-appellants Francisco Corpus and Maria Castillo intervened in a criminal forfeiture proceeding pursuant to 21 U.S.C. § 853(n), asserting that they had an interest in real property subject to forfeiture and that their interest was superior to that of the defendant. They now appeal the district court's final judgment of forfeiture, contending that the district court erred in concluding that their alleged interest in the real property was not superior to that of the defendant. For the reasons that follow, we AFFIRM.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The instant dispute arises in the context of the government's criminal forfeiture action against Leonardo Compean. On April 1, 2004, a federal grand jury indicted Compean on several counts, including conspiracy to possess with intent to distribute marijuana and other drug trafficking crimes. The indictment contained a notice of the government's intent to forfeit real property located at 1413 and 1315 Cottonwood Church Road in Fort Bend County, Texas (the "Cottonwood property") because it was allegedly acquired by Compean with the proceeds of drug trafficking crimes. On April 8, 2004, the government filed a notice of lis pendens in Fort Bend County giving notice of its intent to take the Cottonwood property by forfeiture. On December 20, 2004, Compean pleaded guilty to three drug-related charges and agreed to forfeit the Cottonwood property to the government. The government moved for, and the trial court ordered, forfeiture of the Cottonwood property on August 22, 2005.

This appeal concerns the interests of movants-appellants Francisco Corpus and Maria Castillo (collectively, "the Corpuses"), a husband and wife, in the Cottonwood property. The Corpuses assert that they have an interest in the Cottonwood property superior to that of Compean, and thus superior to that of the government, and they seek to have the forfeiture set aside.

The following time line of events is critical to addressing the Corpuses' asserted interest in the Cottonwood property. The Corpuses entered into a business arrangement in 1996 with Modesto and Felicita Arriaga (collectively, "the Arriagas") to build a dance hall on the Cottonwood property. The Arriagas had purchased the Cottonwood property in 1996 and held a vendor's lien deed. After business dealings between the Corpuses and the Arriagas failed, the Corpuses filed a breach of contract claim in January 1999 against the Arriagas in Texas state court. However, in September 1999 the Arriagas filed for Chapter

13 bankruptcy in the Southern District of Texas and the Corpuses were prohibited from pursuing their state-court suit by the automatic stay that accompanies bankruptcy filings. On April 17, 2003, the Arriagas' Chapter 13 bankruptcy was converted to a Chapter 7 bankruptcy. The bankruptcy court dismissed the Arriagas' bankruptcy case on September 15, 2003, whereupon the automatic stay was lifted.

On March 25, 2003, while the Arriagas' Chapter 13 bankruptcy case was still pending, the Arriagas sold the Cottonwood property in two parts to Compean and Alberto Falcon for approximately $88,000. The money used to purchase the Cottonwood property was proceeds of drug trafficking crimes. The Arriagas deeded both parts of the Cottonwood property to Hugo and Dora Barrera (collectively, "the Barreras"), relatives of Falcon. The bankruptcy court, the trustee, and the Corpuses had no knowledge of the transfer of the Cottonwood property.

After the bankruptcy case was dismissed and the automatic stay was lifted, the Corpuses pursued their state-court breach of contract suit against the Arriagas. On March 2, 2004, the Corpuses were awarded a final judgment in the amount of $66,000, plus fees, interest, and costs. The Corpuses filed an abstract of judgment on March 26, 2004, in the Fort Bend County deed records. Then on April 28, 2004—twenty days after the government filed its notice of lis pendens—the Corpuses filed suit against the Barreras in Texas state court, alleging that the transfer of the Cottonwood property from the Arriagas violated the Texas Uniform Fraudulent Transfer Act ("TUFTA"). The Texas court entered a default judgment against the Barreras ordering that the transfers of the Cottonwood property from the Arriagas to Compean and then to the Barreras were void under TUFTA. But the Corpuses concede that the default

judgment is itself void under 21 U.S.C. § 853(k)(2) because the state court action was commenced after the government filed a lis pendens.[1]

On January 5, 2006, the Corpuses intervened in the district court's forfeiture proceedings pursuant to 21 U.S.C. § 853(n) and filed a petition to set aside the forfeiture of the Cottonwood property. The Corpuses asserted that they had an interest in the Cottonwood property superior to that of Compean, and thus the government, based on, inter alia, TUFTA and the U.S. Bankruptcy Code. The Corpuses and the government filed cross-motions for summary judgment. The district court rejected the Corpuses' asserted interest in the Cottonwood property, granted summary judgment in favor of the government, and entered a final judgment of forfeiture providing that the Corpuses take nothing and that the government be granted all right, title, and interest in the Cottonwood property.

The Corpuses now appeal, asserting generally the same arguments as they did below.

## II. STANDARD OF REVIEW

When a third party files a petition asserting an interest in property that the government seeks to forfeit, the district court is required to conduct an "ancillary proceeding." FED. R. CRIM. P. 32.2. Although this ancillary proceeding arises in the context of criminal forfeiture, it closely resembles a civil proceeding in that the court "may permit the parties to conduct discovery in accordance with the Federal Rules of Civil Procedure," after which "a party may move for

---

[1] Title 21 U.S.C. § 853(k)(2) provides that a third party claiming an interest in property subject to forfeiture may only adjudicate that interest as provided for by § 853(n). See 21 U.S.C. § 853(k)(2), (n). Accordingly, a third party may not attempt to establish an interest in property subject to forfeiture until a final order of forfeiture is entered. See generally United States v. Kennedy, 201 F.3d 1324, 1327 n.6 (11th Cir. 2000). Moreover, a third party "may not initiate a civil action to adjudicate the validity of [his] interest once an indictment or information has been filed." Id.

summary judgment under Federal Rule of Civil Procedure 56." FED. R. CRIM. P. 32.2(c)(1)(B). Because this case comes to us on the district court's grant of the government's Rule 56 motion for summary judgment (and the denial of the Corpuses' cross-motion), we apply the standard of review for grants or denials of summary judgment under Federal Rule of Civil Procedure 56. See FED. R. CRIM. P. 32.2 advisory committee's note to subdivision (c) (noting that where the Federal Rules of Civil Procedure are applicable, prevailing case law on the issue applies); see also Pacheco v. Serendensky, 393 F.3d 348, 352 (2d Cir. 2004) (evaluating motion to dismiss in ancillary proceeding according to the legal standards of the Federal Rules of Civil Procedure).

This court reviews grants and denials of summary judgment de novo, applying the same standards as the district court. Armstrong v. Am. Home Shield Corp., 333 F.3d 566, 568 (5th Cir. 2003). Summary judgment is proper when there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). Facts are material if they might affect the outcome of the lawsuit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). All facts and inferences must be viewed in the light most favorable to the nonmoving party. Armstrong, 333 F.3d at 568.

## III. DISCUSSION

The resolution of the Corpuses' claim is governed by 21 U.S.C. § 853(n) (the "forfeiture statute"). Under § 853(n), a third party "asserting a legal interest in property which has been ordered forfeited to the United States" may "petition the court for a hearing to adjudicate the validity of his alleged interest in the property." 21 U.S.C. § 853(n)(2). Section 853(n)(6) further provides the

legal framework through which a third party may establish an interest in forfeited property:

> If, after the hearing, the court determines that the petitioner has established by a preponderance of the evidence that (A) the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section . . . the court shall amend the order of forfeiture in accordance with its determination.[2]

Id. § 853(n)(6). Finally, § 853(c) contains a "relation back" provision under which "[a]ll right, title, and interest in [forfeited] property . . . vests in the United States upon the commission of the act giving rise to forfeiture." Id. § 853(c).

Accordingly, to prevail on appeal, the Corpuses must establish that they have a legal right, title, or interest in the Cottonwood property that was vested or superior to that of Compean when he purchased the Cottonwood property with proceeds of illegal drug activity on March 25, 2003. The Corpuses do not assert a vested interest in the Cottonwood property but instead assert that they have a right or interest superior to Compean, and thus the government, arising from TUFTA and the Bankruptcy Code.

A. Interest Under TUFTA

The Corpuses first argue that they have an interest in the Cottonwood property superior to that of Compean under TUFTA because they were creditors of the Arriagas and the transfer of the property to Compean was fraudulent as

---

[2] Because the Corpuses do not seek to establish an interest in the Cottonwood property as bona fide purchasers, we do not discuss § 853(n)(6)(B).

a matter of law. The Corpuses assert a claim under § 24.006(a) of TUFTA which provides that a

> transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

TEX. BUS. & COM. CODE ANN. § 24.006(a) (Vernon 2002) (emphases added).

The district court granted the government's motion for summary judgment, focusing incorrectly on § 24.005 of TUFTA and concluding that the Corpuses did not provide evidence from which it could be determined that the Arriagas did not receive reasonably equivalent value for the Cottonwood property or evidence of the Arriagas' intent to hinder, delay, or defraud the Corpuses.

As an initial matter, we agree with the Corpuses that the district court committed two errors when it granted the government's motion for summary judgment on their TUFTA claim. First, the district court erred by requiring the Corpuses to bring forward evidence of the Arriagas' intent to defraud when the Corpuses brought a § 24.006(a) claim. As § 24.006(a) makes plain, the provision contains no intent requirement. See id. Second, although both § 24.005 and § 24.006(a) of TUFTA share as an element of a fraudulent transfer a requirement that it be made "without receiving reasonably equivalent value in exchange for the transfer," the district court erred by requiring the Corpuses to submit the appraisal value of the Cottonwood property to establish that the Arriagas did not receive reasonably equivalent value. The Corpuses and the government stipulated that the "debtors did not receive a reasonably equivalent

value from Defendant [Compean] in exchange for the transfer of the Cottonwood property." This stipulation obviates the need for the appraisal the district court required.

These two errors do not end the instant inquiry. Assuming that the transfer of the Cottonwood property was fraudulent under § 24.006(a), we turn to the question whether the fraudulent transfer gave the Corpuses a "legal right, title, or interest in [the Cottonwood] property" superior to any "right, title, or interest" of Compean at the time of the transfer. 21 U.S.C. § 853(n)(6). The Corpuses assert that the fraudulent transfer gave them an equitable interest in the Cottonwood property at the time of the transfer. They assert in particular that their claim involving the Cottonwood property is superior to the rights of Compean because under TUFTA, Compean's right to the property is subject to their own claim to set aside the transfer. The government argues that even if the transfer was fraudulent, TUFTA does not give the Corpuses an equitable interest—let alone a superior interest—in the Cottonwood property because a defrauded creditor does not take legal or equitable title to property fraudulently conveyed. The government further argues that the Corpuses have only a claim, not a judgment, that the transfer was fraudulent and that a mere claim does not establish an equitable or legal interest in property.

TUFTA "creates a statutory cause of action through which a creditor may seek recourse for a fraudulent transfer." Blackthorne v. Bellush, 61 S.W.3d 439, 443 (Tex. App.—San Antonio 2001). If a transfer is determined to be fraudulent under TUFTA, an unsecured creditor may obtain, subject to the statutory defenses and protections of a transferee:

> (1) avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim;

8

(2) an attachment or other provisional remedy against the asset transferred or other property of the transferee in accordance with the applicable Texas Rules of Civil Procedure and the Civil Practice and Remedies Code relating to ancillary proceedings; or

(3) subject to applicable principles of equity and in accordance with applicable rules of civil procedure:

> (A) an injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property;

> (B) appointment of a receiver to take charge of the asset transferred or of other property of the transferee; or

> (C) any other relief the circumstances may require.

TEX. BUS. & COM. CODE ANN. § 24.008(a) (Vernon 2002).

We note at the outset that on March 25, 2003, the time of the transfer to Compean, the Corpuses were not judgment creditors of the Arriagas, nor were they lien creditors.[3] Instead, the Corpuses were at most unsecured creditors of the Arriagas by virtue of their pending breach of contract claim. While recognizing that an unsecured creditor has an interest in the debtor's estate, other circuits have recognized the often fatal hurdle an unsecured creditor faces in establishing an interest in any particular piece of property. See United States v. Reckmeyer, 836 F.2d 200, 205-06 (4th Cir. 1987) ("Although general creditors can claim an interest in their debtor's estates, they cannot claim an interest in any particular asset that makes up that estate."); see also United States v. Campos, 859 F.2d 1233, 1239 (6th Cir. 1988) (adopting Reckmeyer's proposition

---

[3] Under TUFTA, a judgment creditor may "levy execution on the asset transferred or its proceeds" if a court so orders. TEX. BUS. & COM. CODE ANN. § 24.008(b) (Vernon 2002). Because this case involves an unsecured creditor, we express no opinion as to whether a judgment creditor has rights superior to a transferee in fraudulently transferred property.

that "one must assert something more than being a general creditor"). "Section 853 requires more than a showing of a legal interest in the debtor's property. It requires that the interest exist in the property subject to forfeiture." Reckmeyer, 836 F.2d at 205. And even where an unsecured creditor has an interest in a debtor's property, the type of interest asserted is critical. The forfeiture statute mandates a superior interest in that property. See generally Campos, 859 F.2d at 1239 ("Such a superior interest would clearly be one in the nature of a lien, mortgage, recorded security device, constructive trust, valid assignment, or the like.").

We conclude that the Corpuses, as unsecured creditors, did not have a legal interest, right, or title in the Cottonwood property superior to that of Compean. Despite the Corpuses' reliance on Blackthorne, 61 S.W.3d at 444, for the proposition that creditors have an equitable interest in assets that are fraudulently transferred, the most that the Corpuses—along with all other unsecured creditors of the Arriagas—can claim is a right to set aside the transfer to Compean to satisfy the debt owed to them. But the Corpuses have no right or interest superior to that of Compean to the Cottonwood property itself under TUFTA. As between a transferor (the Arriagas in this case) and a transferee (here, Compean), the transferee holds title to fraudulently conveyed property and a transferor may assert no right, title, or interest in the property. See generally 17 Tex. Jur. 3d Creditor's Rights and Remedies § 634 (2007) (collecting cases). Even where a defrauded creditor sets aside a transfer as fraudulent, the defrauded creditor does not take legal or equitable title to the fraudulently transferred property. Instead, legal and equitable title remain with the debtor relative to a defrauded creditor. See Mladenka v. Mladenka, 130 S.W.3d 397, 400-01 (Tex. App.—Houston 2004) (collecting cases); see also 17 Tex. Jur. 3d

Creditor's Rights and Remedies § 635 (2007). As such, even if the transfer to Compean is set aside under TUFTA, the Corpuses would not obtain a legal right or interest in the Cottonwood property.

B. Interest Under the Bankruptcy Code

The Corpuses next assert an interest in the Cottonwood property superior to that of Compean, and thus the government, under the Bankruptcy Code. The Corpuses contend that the sale of the Cottonwood property to Compean is void under the Bankruptcy Code because they were creditors of the Arriagas, the Cottonwood property was part of the Arriagas' bankruptcy estate at the time of its transfer to Compean, and the Arriagas gave them no notice of the sale as required by 11 U.S.C. § 363(b)(1).[4] The district court concluded that the Arriagas "arguably were not obliged to tell the [Corpuses] that they planned to sell the Cottonwood property" under the particular terms of the Arriagas' Chapter 13 bankruptcy plan, and further determined that even if notice was required, the Corpuses' right to assert an interest under the Bankruptcy Code was time-barred under the two-year statute of limitations provided in 11 U.S.C. § 549(d).

Although the Corpuses re-urge on appeal that the sale to Compean is void because the Arriagas failed to give them notice of the sale, the Corpuses do not explain how the district court erred by barring their claim under § 549(d). Assuming arguendo that the Arriagas were required by § 363(b) to provide the Corpuses with notice of the sale,[5] we agree with the district court that the

---

[4] Title 11 U.S.C. § 363(b)(1) provides: "The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . ." 11 U.S.C. § 363(b)(1).

[5] The district court's conclusion that notice was not required rested on facts concerning the bankruptcy proceeding, including how the Cottonwood property was scheduled, the participation of the Corpuses in the proceeding, and the bankruptcy court's confirmation order.

statute of limitations bars the Corpuses from asserting an interest in the Cottonwood property under the Bankruptcy Code.

Section 549(a) provides that "the trustee may avoid a transfer of property of the estate (1) that occurs after the commencement of the case; and . . . (2)(b) that is not authorized under this title or by the court." 11 U.S.C. § 549(a); see generally In re Photo Promotion Assocs., Inc., 881 F.2d 6, 8 (2d Cir. 1989) (noting "the broad discretion a bankruptcy judge has in applying § 549(a)"). Section 549(d) further provides that "[a]n action or proceeding under this section may not be commenced after the earlier of (1) two years after the date of the transfer sought to be avoided; or (2) the time the case is closed or dismissed." Id. § 549(d). The Corpuses stipulated that the Arriagas transferred the Cottonwood property to Compean on March 25, 2003. And the Arriagas' petition for bankruptcy was dismissed on September 15, 2003. Consequently, under § 549(d), the time allowed for the Corpuses to petition the bankruptcy trustee to avoid the transfer expired on March 25, 2005. The Corpuses did not bring any action seeking to have the bankruptcy estate's trustee avoid the transfer before that date.[6] The earliest date upon which it can be said that the Corpuses invoked an interest under the Bankruptcy Code is January 5, 2006, when they intervened in the government's forfeiture action. Accordingly, the

---

Although the Corpuses do not challenge the district court's reliance on these facts, we do not rely on them to determine whether notice was required because the record on appeal does not include documents establishing these facts. We may assume without deciding that notice was required because we reject the Corpuses' asserted interest on other grounds.

[6] In the district court's discussion of the statute of limitations, the court stated that the Corpuses "waited until April 2004 to complain to another court." We note that the Corpuses' April 28, 2004, action against the Barreras—although technically brought within the two-year statute of limitations—does not save their bankruptcy claim because the Barrera action was based entirely on the Corpuses' rights under TUFTA. Moreover, all parties agree that the judgment resulting from that action is void.

district court did not err in determining that the Corpuses have no interest superior to that of the government in the Cottonwood property under the Bankruptcy Code.

## IV. CONCLUSION

For the foregoing reasons, the district court's final judgment of forfeiture is AFFIRMED.