IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 31, 2008

Charles R. Fulbruge III
Clerk

No. 06-11293

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

GERALD STONE

Defendant

COMMUNITY HOUSING FUND

Appellant

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:04-CR-318-2

Before JONES, Chief Judge, and OWEN and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Community Housing Fund ("CHF") appeals from the district court's dismissal of its third-party petition which claimed an interest in property subject to a Preliminary Order of Forfeiture. The district court found the petition to be untimely. We AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## I. BACKGROUND

CHF is a nonprofit corporation that Barbara Hildenbrand established in 1992. Hildenbrand serves as CHF's registered agent for service of process and as its president. CHF participated in the Department of Housing and Urban Development's ("HUD") Single Family Affordable Housing Program. As part of this program, CHF purchased HUD-owned properties at a discounted rate, renovated them, and sold them to low-income buyers. Ranscott Construction, Inc., which is run by Gerald Stone, performed the majority of the renovations. While participating in HUD's program, Hildenbrand and Stone were charged with wrongful receipt or use of HUD funds. Both pled guilty in 2005. As part of his plea agreement, Stone agreed to the forfeiture of a yacht and a condominium in Florida. Hildenbrand entered no such agreement.

On May 22, 2006, the district court entered a Preliminary Order of Forfeiture. It was served on all counsel of record in Stone and Hildenbrand's criminal case, both by mail and through the court's electronic filing system. Hildenbrand's counsel received that order. The government also published the final notice of forfeiture in a Florida newspaper on July 10, 2006. On August 8, 2006, CHF filed a petition for a hearing to adjudicate its interest in the yacht and the condominium Stone had agreed to forfeit. The district court dismissed the petition as untimely.

On appeal, CHF disputes that it received direct written notice of the forfeiture. Instead, CHF argues that its petition was timely when measured from the date of the newspaper publication.

## II. DISCUSSION

A. Receipt and Sufficiency of the Direct Written Notice

When a third party petitions a court asserting its interest in property to be forfeited to the government, the court must conduct an ancillary proceeding. Fed. R. Crim. P. 32.2(c). Although these proceedings arise in a criminal context,

they closely resemble civil proceedings. United States v. Corpus, 491 F.3d 205, 208 (5th Cir. 2007). Under Rule 32.2(c)(1), there are two points in time at which a petition can be dismissed. Prior to a hearing or to discovery, the court may, upon a motion from a party, "dismiss the petition for lack of standing, for failure to state a claim, or for any other lawful reason." Fed. R. Crim. P. 32.2(c)(1)(A). Motions to dismiss under this provision resemble Federal Rule of Civil Procedure 12(b) motions and are reviewed as such. Pacheco v. Serendensky, 393 F.3d 348, 352 (2d Cir. 2004). After discovery but before a hearing, a party may move for summary judgment. Fed. R. Crim. P. 32.2(c)(1)(B). A court's decision under this provision is reviewed using the same standard as under Federal Rule of Civil Procedure 56. Corpus, 491 F.3d at 208-09.

Though the district court did not refer to a specific part of Rule 32.2(c)(1) that was being applied, evidence outside the pleadings was necessary for the resolution. Thus, this was a summary judgment. We review a grant of summary judgment de novo. McInstosh v. Partridge, 540 F.3d 315, 319 (5th Cir. 2008). Summary judgment is appropriate when no disputed issue of material fact exists, and the movant is entitled to judgment as a matter of law. Id. at 320.

After an order of forfeiture is entered, the government is required to publish notice of the order and may also, to the extent practicable, provide direct written notice to anyone known to have a potential interest in the property. 21 U.S.C. § 853(n)(1). Any third party asserting an interest in the property being forfeited may petition the court for a hearing within 30 days either of receiving actual notice or of the date of final publication of the notice, whichever occurs earlier. Id. § 853(n)(2). CHF argues that it never received direct written notice because it was not served with the order. Therefore, CHF argues that its petition was timely because it was filed within 30 days of the final publication notice. The government argues that CHF received direct written notice when Hildenbrand was served with the order through her lawyers.

There is no argument that written notice was ever sent to Hildenbrand's personal or CHF's corporate address. The direct written notice that went out was addressed to and received by Hildenbrand's attorneys in her criminal case. The issue is whether that receipt was sufficient to put CHF on notice. CHF argues that direct written notice needed to be given to CHF or directed to Hildenbrand in her official capacity as registered agent. However, CHF points us neither to language in the statute nor other authority that "direct written notice" is only satisfied in that way in circumstances such as this. We will delve into the specifics of those circumstances below.

In summary, Hildenbrand through her attorneys received this notice; nothing holds such notice to be inadequate. Thus, whether this procedure was good enough is an issue of constitutional due process. The notice must have been "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950). This focus on reasonableness is not done blindly but instead views all the circumstances. The relevant ones here include that CHF is a small, nonprofit organization. The government introduced certain corporate records from the Texas Secretary of State's Office. They reveal that when the Articles of Incorporation were filed in 1992, Hildenbrand was one of the three incorporators, was the original registered agent, and was the only signatory to the Articles. When the amendments to the Articles were filed later that first year, Hildenbrand signed as president and also did so in filings in 1996 and 1999. When amendments to the Articles were filed by Hildenbrand as president in 2003, the document stated that there were no "members" of the corporation. A Texas non-profit corporation need not have members. Tex. Rev. Civ. Stat. Ann. art. 1396-2.08(A). Their absence suggests all the more, though, that Hildenbrand was the corporation.

At the time of the service of the notice to her attorney, Hildenbrand was the president and registered agent of a nonprofit corporation without members. On behalf of CHF, she brought the third-party petition that commenced the proceedings we review today. She is also one of three members of the CHF board of directors. Hildenbrand is the only director to have served on the board continuously since CHF's inception in 1992.

Also a circumstance is that the prosecution for which Hildenbrand had employed the attorney who received the forfeiture notice, charged her with using CHF for illegal purposes, purposes which were the grounds for forfeiture. Thus, her attorneys received the notice in a case in which CHF was a central actor.

Based on these circumstances, we find that direct written notice to Hildenbrand through her attorneys on May 22, 2006, was reasonably calculated to apprise CHF of the need to assert any rights to the property being forfeited. With Hildenbrand's receipt, it was proper for the district court to conclude that CHF received direct written notice. When CHF filed its third-party petition on August 8, 2006, the 30-day time period for filing the petition had expired.

CHF also argues that the notice was inadequate because it failed to mention CHF specifically or its interest in the property. See United States v. Estevez, 845 F.2d 1409 (7th Cir. 1988) (government provided insufficient notice to a third party). In Estevez, the notice referred to the forfeiture of any of a group of criminal defendants' financial interests in a piece of real property. Id. at 1411 & n.3. However, the third-party petitioner actually owned the piece of real property, not the defendants. Id. at 1411. Until the third-party petitioner was directly served, he was not on notice of the threat to his property. Quite differently, in the present case, the order provided for the forfeiture of specific property. Identified in the notice was the yacht and "all buildings, appurtenances, and improvements" located at the condominium in Florida. This

5

was sufficient to put CHF on notice that it needed to file a third-party petition if it had an interest in any of that specific property.

The filing by CHF of its petition was untimely.

B. Dismissal of the Petition Before the Government Could Seek a Final Order

CHF also argues that granting the government's motion to dismiss CHF amounted to an improper default judgment. It offers caselaw on the standards for default judgments and argues they were not met. See Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986). The argument focuses on the prejudice factor relevant to the review of default judgments and concludes that no prejudice existed because petitions from any third parties whose notice was solely by publication would not yet have been due when CHF's petition was filed.

We find the argument misdirected. What occurred here was not a default judgment. It is true that the government cannot gain title until after the period has expired during which parties who receive notice only by publication may file their petitions. 21 U.S.C. § 853(n)(7). CHF is correct that when CHF filed its petition on August 8, 2006, third parties that had received notice by publication still had two more days to file their timely petitions. However, the district court did not enter a default judgment against CHF. Such a judgment resolves a claim by a party properly served or who is otherwise present in the litigation, and who thereafter fails to plead or defend. Fed. R. Civ. P. 55(a). We have found CHF to have been served, but only with a notice of the opportunity to assert a claim. It was for CHF to assert that claim within 30 days. 21 U.S.C. § 853(n)(2). All those who are served or receive constructive notice of the forfeiture are not parties against which a default judgment would be appropriate. They are potential claimants who must timely appear and assert their rights.

We find the district court appropriately dismissed CHF's petition based on the fact that it was not timely filed. When any judgment on the forfeiture eventually was entered, those who had not timely responded would not have

been eligible to have their interests considered. No default judgment would have been needed against them. Disputes about whether or not the government would have been prejudiced by considering any late-filed petitions are irrelevant.

The district court's dismissal of the petition is AFFIRMED.

OWEN, Circuit Judge, dissenting.

The Government had the burden of proving that it "provide[d] direct written notice" of forfeiture proceedings pursuant to 21 U.S.C. § 853(n)(1). The majority concludes that notice to legal counsel representing an individual in criminal proceedings may be imputed to that individual and then imputed to a corporation because the individual serves as president and registered agent of that corporation. Because I cannot agree that imputed notice that is then imputed to another entity constitutes "direct written notice," I respectfully dissent.

Community Housing Fund (CHF) is a non-profit corporation formed by Barbara Hildenbrand and was a victim of criminal activities conducted by Hildenbrand and her co-defendant Gerald Stone. Hildenbrand has been convicted of violating 18 U.S.C. § 1012 in connection with the wrongful receipt or use of funds from the Department of Housing and Urban Development. Stone pled guilty to a conspiracy to violate 18 U.S.C. §§ 666 and 7201 and agreed to the forfeiture of the assets at issue in the present case, which are a yacht and a condominium in Florida. CHF asserts an interest in these assets.

It is undisputed that CHF filed a request for a hearing regarding the forfeiture of this property within thirty days after the final notice by publication of the forfeiture proceedings.[1] The only question is whether CHF was provided "direct written notice" prior to the notice by publication.[2] If CHF was provided

---

[1] See 21 U.S.C. § 853(n)(2), which provides in pertinent part:

> Any person, other than the defendant, asserting a legal interest in property which has been ordered forfeited to the United States pursuant to this section may, within thirty days of the final publication of notice or his receipt of notice under paragraph (1), whichever is earlier, petition the court for a hearing to adjudicate the validity of his alleged interest in the property.

[2] See 21 U.S.C. § 853(n)(1).

with direct notice, its request for a hearing was untimely. Otherwise, its request was timely, and the district erred in dismissing its request for a hearing. The Government does not contend that either CHF or Hildenbrand received actual notice of the forfeiture proceedings before the final notice by publication. The Government relies entirely on imputed and re-imputed notice.

The statute at issue, 21 U.S.C. § 853(n)(1), provides:

> Following the entry of an order of forfeiture under this section, the United States shall publish notice of the order and of its intent to dispose of the property in such manner as the Attorney General may direct. The Government may also, to the extent practicable, provide direct written notice to any person known to have alleged an interest in the property that is the subject of the order of forfeiture as a substitute for published notice as to those persons so notified.

The Government's position is that notice to Hildenbrand's counsel in the criminal prosecution of Hildenbrand and Stone was "direct written notice" to CHF because Hildenbrand was CHF's president and registered agent for service of process. This notice to counsel was two-fold: a computer-generated notice on the district clerk's website as part of an electronic case-filing system and an e-mail sent to all counsel for the criminal defendants in the criminal prosecution.

Although there is little authority construing 21 U.S.C. § 853(n)(1), decisions applying 19 U.S.C. § 1607(a) provide guidance.[3] The Government must affirmatively establish that CHF had direct written notice of the forfeiture.[4]

---

[3] Compare 19 U.S.C. § 1607(a) (stating that, in the context of administrative forfeiture proceedings, "[w]ritten notice of seizure together with information on the applicable procedures shall be sent to each party who appears to have an interest in the seized article"), with 21 U.S.C. § 853(n)(1) (stating that, as a substitute for published notice, the Government may provide "direct written notice to any person known to have alleged an interest in the property that is the subject of the order of forfeiture").

[4] See generally Taylor v. United States, 483 F.3d 385, 387, 390 (5th Cir. 2007) (construing 19 U.S.C. § 1607(a), stating that the Government has the burden of demonstrating that its notice was reasonably calculated, under all the circumstances, to apprise a claimant of the forfeiture); United States v. Robinson, 78 F.3d 172, 173, 175 (5th Cir. 1996) (holding that

CHF also contends that due process requires that notice must be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of an action and afford them the opportunity to present their objections. In applying statutory notice provisions that are similar to 21 U.S.C. § 853(n)(1), this court has held that the requirements set forth by the Supreme Court in Mullane v. Central Hanover Bank & Trust Co.[5] are implicated, and therefore, "[a]lthough the Government is not required to undertake 'heroic efforts,' it must fulfill Mullane's command that the effort be 'reasonably calculated' to provide notice."[6] "The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it."[7]

The Government did not take any affirmative steps to send a notice directly to CHF. The Government has produced no evidence to contradict allegations that it was aware of CHF's interest in the property and that it considered CHF a victim throughout the underlying criminal proceedings. It also has not demonstrated that sending notice to CHF directly, or to Hildenbrand specifically in her capacity as the registered agent for CHF, would have imposed an undue burden.[8]

---

the Government has the burden of demonstrating compliance with the notice requirements of 19 U.S.C. § 1607(a) on summary judgment).

[5] 339 U.S. 306, 314 (1950).

[6] See Taylor, 483 F.3d at 388 (applying 19 U.S.C. § 1607(a)).

[7] Mullane, 339 U.S. at 315.

[8] See Aero-Med., Inc. v. United States, 23 F.3d 328, 330-32 (10th Cir. 1994) (reviewing adequacy of notice pursuant to 19 U.S.C. § 1607(a)); see also Lopez v. United States, 201 F.3d 478, 481 (D.C. Cir. 2000) (holding that the "absence of any suggestion that the notice [of a forfeiture] was sent for a purpose other than informing [the claimant's wife] of her own interest in the proposed forfeiture renders the notice facially deficient as to [the claimant], regardless whether [his wife] was his agent for the service of process" (citation omitted)); United States v. Marolf, 173 F.3d 1213, 1215, 1217 (9th Cir. 1999) (noting that the Government conceded

I agree that notice to Hildenbrand's counsel in her criminal prosecution was imputed notice to Hildenbrand in her individual capacity as a criminal defendant. But I cannot say that this establishes that Hildenbrand received actual notice or acquired actual knowledge of the forfeiture proceedings in her capacity as CHF's president or agent,[9] such that this knowledge could then be imputed to CHF.[10]

The Government's argument that notice sent to Hildenbrand in her individual capacity through her attorney constitutes notice to CHF because of the close relationship between CHF and Hildenbrand is also unpersuasive because the Government has not produced any evidence, apart from a conclusory statement in its brief, of an alter-ego relationship between Hildenbrand and CHF.[11] The evidence discussed by the majority would not support a finding of alter ego, even had the district court made such a finding, which it did not.

---

notice was insufficient when sent to co-defendant but not to claimant after claimant's interest in the same property was discovered).

[9] 3 WILLIAM MEADE FLETCHER, FLETCHER CYCLOPEDIA OF THE LAW OF CORPORATIONS §§ 789, 791, 793, 794 (2008) (noting that knowledge acquired by an officer of the corporation, while conducting purely personal affairs and not purporting to act as a representative of the corporation, is not imputable to the corporation); see also United States v. 7236 Highway 45 North, 965 F.2d 311, 316-18 (7th Cir. 1992) (holding that president's knowledge of illegal activities he was conducting on corporate property could not be imputed to the corporation for purposes of the innocent owner defense in a forfeiture proceeding, observing "since [the criminal defendant] did not obtain knowledge of his activities while acting to benefit his principal, his knowledge cannot be imputed to [the corporation]").

[10] See Am. Standard Credit, Inc. v. Nat'l Cement Co., 643 F.2d 248, 270-72 (5th Cir. 1981) (stating that whether the agent possessed actual knowledge is ordinarily a question of fact that must be resolved before such knowledge can be imputed to the principal); see also FLETCHER, supra note 11 § 803 (stating that the type of knowledge that may be imputed from the agent to the principal includes actual knowledge or actual notice of circumstances sufficient to put a prudent person upon inquiry).

[11] See Aero-Med., Inc., 23 F.3d at 331 (noting that there was no finding of an alter-ego relationship between the claimant, a corporation created by a criminal defendant, and that defendant, and therefore "notice to [the criminal defendant], either personally or through defense counsel, would not necessarily have been reasonably calculated to reach plaintiff").

While CHF did authorize Hildenbrand's counsel to represent it in filing its request for a hearing regarding the forfeiture, there is no evidence that at the time this attorney received notice on behalf of Hildenbrand individually, this attorney was also CHF's counsel.[12] Nor has the Government established that CHF authorized counsel to act on its behalf in the forfeiture proceedings before the final notice by publication occurred.

In light of the fact that forfeitures are traditionally a disfavored remedy and the importance of due process safeguards in this context, I cannot say that the Government has met its burden in this case.[13] CHF filed a petition for a hearing within the time permitted following the published final notice in a Florida newspaper. I would hold that CHF's request for a hearing to adjudicate its interest in the property at issue was timely.

---

[12] See United States v. Puig, 419 F.3d 700 (8th Cir. 2005) (holding that an attorney's knowledge of the forfeiture proceeding was imputed to his client where the record contained evidence that the attorney was in fact representing the claimant more than thirty days prior to filing a petition for an ancillary hearing).

[13] See generally Armendariz-Mata v. U.S. Dep't of Justice, DEA, 82 F.3d 679, 683 (5th Cir. 1996) (stating that because forfeitures are disfavored, the government must comply with both the letter and spirit of the law in notifying potential claimants).