**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 18, 2009

Charles R. Fulbruge III
Clerk

No. 08-10379

GRAY LAW LLP

Plaintiff-Appellant

v.

TRANSCONTINENTAL INSURANCE COMPANY

Defendant-Appellee

Appeal from the United States District Court
for the Northern District of Texas

Before JONES, Chief Judge, JOLLY, Circuit Judge, and CARDONE,[*] District Judge.

PER CURIAM:

This appeal presents a dispute over an attorneys' fees agreement between a law firm, representing an injured worker in a suit against a third-party tortfeasor, and a workers' compensation carrier, who claims subrogation rights for medical payments made to the worker. The district court granted summary judgment for the carrier, holding that the agreement was unenforceable.

The dispute arises from a medical malpractice case in which Gray Law represented the injured worker. That case settled for $4,200,000, of which the

---

[*] United States District Judge, Western District of Texas, sitting by designation.

worker kept only approximately $900,000, after the lawyers and workers' compensation carrier took their shares. Having recovered more than $1,600,000 in attorneys' fees from its client, Gray Law then filed this action against the workers' compensation carrier, Transcontinental, seeking a share of the carrier's subrogation recovery. Gray Law contends it entered an agreement with Transcontinental that entitles it to attorneys' fees; Transcontinental, arguing there was no meeting of the minds, denies any agreement. It insists that it is entitled to keep the disputed money. We decide that there was an agreement, but the controlling Texas statute prevents it from being enforced. For reasons we will explain, the opportunity to enforce that agreement, including on behalf of the injured worker, was squandered. Accordingly, we affirm the district court's judgment for Transcontinental, albeit on different grounds.

## I.

We begin with the underlying facts.

In 1997, Daniel Huckabee sustained a neck injury at work that required surgery. Complications from that surgery resulted in permanent brain damage. Transcontinental paid workers' compensation benefits to Huckabee to cover his medical expenses. Meanwhile, Huckabee retained Gray Law to file a medical malpractice action against the medical providers who performed the surgery. The case eventually settled at mediation for $4,200,000, and by statute, Transcontinental had a right to be reimbursed for the benefits it paid to Huckabee.[1]

The present dispute has its origins in correspondence exchanged early in the litigation between Jay Gray, of Gray Law, and Jeffrey Lust, Transcontinental's attorney. On February 20, 2002, Gray wrote to Lust:

---

[1] "The net amount recovered by a claimant in a third-party action shall be used to reimburse the insurance carrier for benefits, including medical benefits, that have been paid for the compensable injury." TEX. LAB. CODE ANN. § 417.002(a).

> It is my understanding that it is CNA's wish to have our firm represent their interest in this matter. To that end, we will receive a fee of one-third of the insurance carrier's recovery and a proportionate share of expenses. Please acknowledge CNA's agreement, by signing in the space provided below and returning it to me.[2]

Upon receipt of the letter, Lust discussed the proposed attorneys' fees with William Pratt, Gray's co-counsel. Lust then signed the February letter as requested and returned it on March 8. Lust, however, also wrote in a cover letter:

> Attached is the letter that you sent regarding our agreement on fees and expenses in the above referenced matter. Per our discussion of March 4th, it is understood that my client's agreement to reduce its lien by 1/3 represents the 1/3 fee mentioned in the attached letter. Further, we agreed that my client's share of proportionate expenses will be calculated based on what percentage that my client's actual recovery bears to the total settlement amount or verdict. (i.e. If the total settlement or verdict is $10 million and CNA recovers $1 million, then CNA will pay 10% of the expenses). In that regard, please provide a detailed account of what the expenses are to date.

Gray Law interprets the correspondence as an agreement entitling it to one third of Transcontinental's subrogation recovery. Transcontinental denies that the correspondence formed an agreement of any sort.

Transcontinental argues alternatively that any agreement as to attorneys' fees is unenforceable under the applicable Texas statute because Lust actively represented Transcontinental's interests in the case. Transcontinental points out that Lust filed a petition to intervene and claims that thereafter Lust actively participated in the case on Transcontinental's behalf. According to Gray

---

[2] CNA owns Transcontinental Insurance Company.

Law, however, Lust attended only two or three of the more than forty depositions taken. Gray was the lead attorney at trial. Lust retained no experts for trial, made no statements on the record, did not question any witnesses, and did nothing to establish liability for recovery. He attended a few days of the trial, but he neither entered an appearance nor sat at counsel's table. Lust did, however, forward a check in the amount of $19,770.44 to Gray Law to defray its trial expenses. The trial lasted nearly three weeks and ended in a hung jury. In mediation, which Lust did attend and participate, the case settled for $4,200,000. Gray Law's contingency fee with Huckabee provided that Gray Law would receive forty percent of the gross recovery, plus expenses.[3] Of the $4,200,000, Gray Law received a total, including expenses, of $1,808,180. $850,000 was then paid to an annuity to provide payments to Huckabee and his wife Linda, who also received a $46,820 cash payment. Transcontinental, although its lien was worth approximately $1,646,000,[4] settled for $1,400,000 and agreed to waive its statutory right to suspend future workers' compensation benefits on the basis of Huckabee's recovery. Huckabee's guardian ad litem, who attended mediation, approved the settlement agreement and disbursement.

The state court approved the settlement agreement and disbursement and dismissed the case on April 22, 2004. The settlement agreement did not provide for any apportionment of the settlement proceeds between Gray Law and Transcontinental. Neither Gray Law nor Transcontinental brought their prior

---

[3] During mediation Huckabee's guardian ad litem asked Gray Law to instead take forty percent of the amount of recovery *after* deduction for expenses. There was testimony that Gray Law was initially reluctant, but eventually agreed. From the gross recovery amount of $4,200,000, $205,000 in expenses was deducted. The balance of $3,995,000 was multiplied by forty percent. The total attorneys' fees were $1,603,180, to which expenses were added back, for a total of $1,808,180.

[4] At the time of settlement, Transcontinental had paid benefits equalling more than $1,800,000, but it asserted a lien of only $1,646,000, for benefits paid after the surgery that was the subject of the third-party liability.

correspondence to the court's attention. Nor did Gray Law disclose its correspondence with Transcontinental to his client, Huckabee.

Three months later Gray Law sent a letter to Transcontinental demanding a one-third share of Transcontinental's recovery:

> Demand is hereby made upon CNA/Transcontinental Insurance Company to pay the previously agreed upon attorney's fees and *pro rata* expenses for the recovery of the subrogation amount in the above-referenced cause.
>
> The total sum due and owing by CNA/Transcontinental Insurance Company's share of the expenses is $534,424.94 which constitutes $466,200.00 for attorney's fees (33.3% of $1,400,000.00) and $68,324.94 for expenses (1/3 of the total expenses of $205,180.00).

Upon Transcontinental's refusal to pay, Gray Law filed this action in state court, alleging breach of contract. Transcontinental removed the case to federal district court, and the district court granted summary judgment for Transcontinental. The district court pretermitted whether an agreement had been formed. Instead, the district court decided that Lust had actively represented Transcontinental and that under the controlling Texas statute any agreement was of no moment because Gray Law had already received the maximum amount recoverable in attorneys' fees.

Although we agree with the district court that Gray Law is not entitled to additional attorneys' fees, we arrive at our decision by a different route. *See Ballard v. Burton*, 444 F.3d 391, 401-02 (5th Cir. 2006) ("[W]e may affirm this judgment on any other grounds supported by the record.") (citations omitted). Specifically, we decide whether there was an agreement before we decide what effect the controlling Texas statute has on it.

II.

We review the district court's grant of summary judgment *de novo*, applying the same legal standards as the district court. *United States v. Corpus*, 491 F.3d 205, 209 (5th Cir. 2007). Summary judgment is appropriate only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In determining whether a genuine issue as to any material fact exists, we must view the evidence in the light most favorable to the nonmoving party. *Corpus*, 491 F.3d at 209. "We may affirm a summary judgment on any ground supported by the record, even if it is different from that relied on by the district court." *Holtzclaw v. DSC Communications Corp.*, 255 F.3d 254, 258 (5th Cir. 2001).

III.

We first address the correspondence exchanged between Gray Law and Transcontinental. Transcontinental denies that the correspondence formed an agreement because, it argues, the correspondence failed to achieve a meeting of the minds. Transcontinental is correct that under Texas law a meeting of the minds is essential to any contract. *See, e.g., Sonne v. FDIC*, 881 S.W.2d 789 (Tex. App.-Houston 1994, rehearing denied).

Transcontinental first points to what it calls an inconsistency in the letters exchanged between Jay Gray and Jeffrey Lust. In his letter of February 20, 2002, Gray sought to verify that, in exchange for its representation, Gray Law "will receive a fee of one-third of the insurance carrier's recovery and a proportionate share of the expenses." On March 8, Lust responded: "Per our discussion of March 4th, it is understood that my client's agreement to reduce its lien by 1/3 represents the 1/3 fee mentioned in the attached letter." Transcontinental asserts that because Gray's letter anticipated a fee, when

6

Lust's responsive letter reflected an understanding to reduce Transcontinental's lien, the correspondence failed to achieve a meeting of the minds.

Transcontinental next points to language in Gray's letter stating that, "[i]t is my understanding that it is CNA's wish to have our firm represent their interest in this matter." Although this language suggests that Gray Law, in response to a request by Transcontinental, would represent Transcontinental in the litigation, Transcontinental contends that Gray stated in deposition testimony that he represented Huckabee, and not Transcontinental. Transcontinental argues that this testimony indicates that there was no meeting of the minds concerning representation.

Transcontinental's arguments are unconvincing. Under Texas law, to discern whether there was a meeting of the minds, we look in an "objective fashion" for "what the parties actually said and did." *Choctaw Properties, LLC v. Aledo ISD*, 127 S.W.3d 235, 245-46 (Tex. App.-Waco 2003, no pet.) ("a court reviews in an objective fashion 'what the parties actually said and did' without consideration of subjective intent"). Although it may be possible for Transcontinental to read the letters to argue that they are inconsistent, we think an objective reading resolves any alleged inconsistency. Lust's letter states that, per prior discussion, the parties understood that the agreement was modified to reflect how Transcontinental would satisfy its fee obligation, that is, Transcontinental had agreed to reduce its lien by one third. That Lust's language is not an inconsistency, but instead a modification to which Gray Law had consented in prior conversation, is underscored by Gray Law's acceptance of the written modification without any objection. These circumstances do not suggest a failure to achieve a meeting of the minds; to the contrary they reflect that the parties reached a negotiated understanding and proceeded accordingly.

We thus conclude, based on what the parties said and did, that the correspondence achieved both a meeting of the minds and sufficient certainty to

7

define its terms. Nevertheless, although we agree with Gray Law that the correspondence formed an agreement, we disagree that it entitles Gray Law to one third of Transcontinental's subrogation recovery. Gray Law assumes, without arguing, that the agreement entitles it to fees. Indeed, Gray Law has not been required to defend its interpretation because Transcontinental has argued only that the agreement either does not exist or is unenforceable, not that Gray Law's interpretation of its terms is incorrect. Under Texas law, however, if we conclude the agreement's language can be given a certain meaning, then we must interpret it as a matter of law. *See DeWitt Co. Elec. Coop., Inc. v. Parkes,* 1 S.W.3d 96, 100 (Tex. 1999) ("When a court concludes that contract language can be given a certain or definite meaning, then the language is not ambiguous, and the court is obligated to interpret the contract as a matter of law."). We have already stated that the agreement is sufficiently certain, and we now conclude the agreement does not entitle Gray Law to additional fees from Transcontinental, but instead plainly provides that Transcontinental would satisfy its obligation to Gray Law by reducing its lien by one third.[5]

## IV.

Having decided that there was an agreement that Gray Law would represent Transcontinental and, in turn, that Transcontinental would reduce its lien by one third, we next decide whether the agreement is enforceable under Texas law. We refer to the Texas Workers' Compensation Act for this determination. Gray Law argues that under the Act the agreement is enforceable; Transcontinental argues that under the Act it is not.

## A.

---

[5] This is no small difference. If Transcontinental had merely agreed to pay Gray Law attorneys' fees equaling one third of Transcontinental's subrogation recovery, Gray Law alone would stand to benefit from the agreement. But here both Gray Law and Huckabee stood to benefit from the agreement, since Transcontinental agreed to reduce its subrogation claim on Huckabee's gross recovery by one third, of which Gray Law would receive forty percent.

We begin our discussion by examining § 417.003 of the Texas Workers' Compensation Act.[6]

Section 417.003 generally provides for a worker's attorney to collect fees from the workers' compensation carrier as compensation for pursuing a third-party action. Gray Law correctly points out that the purpose of § 417.003 is to pay a worker's attorney for the benefit accruing to the carrier as a result of the attorney's efforts. *Tex. Workers' Comp. Ins. Fund v. Alcorta*, 989 S.W.2d 849, 851

---

[6] Section 417.003 of the Texas Workers' Compensation Act:

(a)    An insurance carrier whose interest is not actively represented by an attorney in a third-party action shall pay a fee to an attorney representing the claimant in the amount agreed on between the attorney and the insurance carrier. In the absence of an agreement, the court shall award to the attorney payable out of the insurance carrier's recovery:

   (1)    a reasonable fee for recovery of the insurance carrier's interest that may not exceed one-third of the insurance carrier's recovery; and
   (2)    a proportionate share of expenses.

(b)    An attorney who represents the claimant and is also to represent the subrogated insurance carrier shall make a full written disclosure to the claimant before employment as an attorney by the insurance carrier. The claimant must acknowledge the disclosure and consent to the representation. A signed copy of the disclosure shall be furnished to all concerned parties and made a part of the division file. A copy of the disclosure with the claimant's consent shall be filed with the claimant's pleading before a judgment is entered and approved by the court. The claimant's attorney may not receive a fee under this section to which the attorney is otherwise entitled under an agreement with the insurance carrier unless the attorney complies with the requirements of this subsection.

(c)    If an attorney actively representing the insurance carrier's interest actively participates in obtaining a recovery, the court shall award and apportion between the claimant's and the insurance carrier's attorneys a fee payable out of the insurance carrier's subrogation recovery. In apportioning the award, the court shall consider the benefit accruing to the insurance carrier as a result of each attorney's service. The total attorney's fees may not exceed one-third of the insurance carrier's recovery.

(d)    For purposes of determining the amount of an attorney's fee under this section, only the amount recovered for benefits, including medical benefits, that have been paid by the insurance carrier may be considered.

(Tex. App.-San Antonio 1999, no pet.). The statute prevents a carrier from getting a "free ride" from the worker's attorney's efforts.[7] *Caesar v. Bohacek*, 176 S.W.3d 282, 285 (Tex. App.-Houston [1st Dist.] 2004, no pet.).

Texas courts have interpreted § 417.003 to permit the recovery of attorneys' fees in three distinct situations:

> [(a)] where the insurer has an attorney but he does not actively represent it; [(b)] where the worker's attorney represents both the worker and the insurer; and [(c)] where the insurer has an attorney who actively represents it and participates in obtaining recovery.

*Erivas v. State Farm*, 141 S.W.3d 671, 677 (Tex. App.-El Paso 2004, no pet.).

Thus, for each of the three situations, a separate condition applies.

Gray Law argues that § 417.003(a) applies here because Lust did not actively represent Transcontinental. Section 417.003(a) contemplates that the worker's attorney and the insurer may form an agreement as to attorneys' fees on the subrogation claim. Gray Law points to its agreement with Transcontinental, and argues that Transcontinental entered it with § 417.003(a) in mind.

Transcontinental argues that § 417.003(c), and not § 417.003(a), applies because, as the district court held, Lust actively represented its interests and participated in obtaining recovery. Under § 417.003(c), a court may still award attorneys' fees, but must apportion them between the insurer's attorney and the worker's attorney, based upon the contribution of each.

Alternatively, and not without some contradiction, Transcontinental argues that, because Gray Law represented both Huckabee and Transcontinental, § 417.003(b) applies. Under § 417.003(b), an attorney who

---

[7] As the case comes to us, it hardly appears that Gray Law was shortchanged, since Gray Law collected as its contingency fee forty percent of Huckabee's gross recovery (less expenses), which included money that should have first gone to pay Transcontinental's lien and on which there should have been no contingency owed by Huckabee to Gray Law.

represents both the worker and the carrier must make full written disclosure of the representation of the carrier to the worker and obtain the worker's consent. Transcontinental argues that because Gray Law did not make full written disclosure to Huckabee, under § 417.003(b) it may not collect attorneys' fees from Transcontinental.

The district court agreed with Transcontinental that Lust had actively represented Transcontinental's interests and thus determined that § 417.003(c) controlled the case. The district court then held that § 417.003(c) does not contemplate that parties will form an agreement and, consequently, whether Gray Law and Transcontinental had an agreement was of no moment. The district court also refused to apportion attorneys' fees because it held that § 417.003(c) does not envision that a worker's attorney will collect fees from both the worker and the carrier on the same recovery. The district court further held that Gray Law had already recovered "the maximum amount."

For the reasons stated below, we agree that Gray Law is not entitled to attorneys' fees from Transcontinental. We conclude, however, that § 417.003(b), and not § 417.003(c), controls this case. Accordingly, we need not decide whether Lust's participation in the litigation constituted active representation within the meaning of § 417.003(c).

B.

As stated, we conclude that § 417.003(b) controls this case. Transcontinental argues that because Gray Law did not make full written disclosure of its representation of Transcontinental to Huckabee, Gray Law did not comply with § 417.003(b), and it may not now collect attorneys' fees from Transcontinental.[8] We agree with Transcontinental.

_____

[8] Although Transcontinental raised this argument below, the district court did not address it because it found Transcontinental's reliance on § 417.003(b) unpersuasive in the light of Transcontinental's insistence that Lust, and not Gray Law, had represented it in the

We note at the outset that the exact delineation between § 417.003(a) and § 417.003(b) is not altogether clear. Texas courts have stated that § 417.003(a) permits recovery "where the insurer has an attorney but he does not actively represent it," while § 417.003(b) permits recovery "where the worker's attorney represents both the worker and the insurer." *Erivas v. State Farm*, 141 S.W.3d 671, 677 (Tex. App.-El Paso 2004, no pet.) As a practical matter, the worker's attorney is at least assisting the carrier's interests under either situation. Of course what is clearly different is that § 417.003(b) requires full written disclosure, but § 417.003(a) does not.

Transcontinental cites no case law in support of its argument that § 417.003(b) should apply here, and indeed we have found no case law interpreting § 417.003(b). The text of § 417.003(b) itself, however, is determinative in this case:

> An attorney who represents the claimant and is also to represent the subrogated insurance carrier shall make a full written disclosure to the claimant before employment as an attorney by the insurance carrier. . . . . The claimant's attorney may not receive a fee under this section to which the attorney is otherwise entitled under an agreement with the insurance carrier unless the attorney complies with the requirements of this subsection.

By its plain language, § 417.003(b) recognizes that a conflict of interest, or at least a potential conflict of interest, arises when the attorney for the injured worker enters an agreement also to represent the carrier for the employer in the same action. Section 417.003(b) effectively says the worker is not a mere potted plant on the sidelines of the litigation; indeed, he has the primary stake in the outcome and his interests are the more critical to advance and protect.

underlying litigation. There is, however, no reason why Transcontinental could not advance two separate, even contradictory theories in support of its case.

Furthermore, § 417.003(b) recognizes that an attorney's conflict of interest with his client can never ethically be hidden from the client. To this end, § 417.003(b) provides that joint representation must not only be consented to by the worker, but the agreement must be in writing. Section 417.003(b) further provides the stiff penalty of the denial of any fee to the non-complying attorney, even though he may be otherwise entitled to it.

It is thus apparent that § 417.003(b) applies in those situations where the worker's attorney and the carrier enter an agreement that provides that the attorney "is also to represent the subrogated insurance carrier."[9] We have earlier held that an agreement was reached between Transcontinental and Gray Law. That agreement not only provided for a fee arrangement, but also stated that Gray Law would represent Transcontinental in the same litigation in which it was representing the injured worker. Because it was not a mere agreement providing a percentage of the recovery by Transcontinental, this case does not fall under § 417.003(a). Instead, § 417.003(b) applies to this case. Because Gray Law failed to comply with its terms, it suffers its penalties. Gray Law is entitled to no fees.

V.

For the reasons stated herein, we AFFIRM.

---

[9] Our reading is consistent with Texas case law interpreting an almost identical full written disclosure rule in a predecessor statute. *Int'l Ins. Co. v. Burnett & Ahders, Associates*, 601 S.W.2d 199 (Tex. App.-El Paso 1980, rehearing denied) (interpreting TEX. REV. CIV. STAT. ANN. art. 8307, §6a (1973)). The court in *International Insurance Company* complained that the then-existing statute did not specify "separate situations in those cases where the claimant's attorney represents both the claimant and the intervenor, and those where the intervenor has its own attorney." *Id.* at 200-01. It resolved the issue by interpreting the statute to require full written disclosure "only where the fees recovered by the claimant's attorney are those recovered 'pursuant to an agreement with the association.'" *Id.*

E. GRADY JOLLY, Circuit Judge, concurring:

We have decided that because Gray Law did not make full written disclosure to Huckabee, under § 417.003(b) it may not receive any benefit from the agreement it shared with Transcontinental. I write separately here to explain how this case may have been different if the parties had complied, not only with the Texas Workers' Compensation Act, but also with the Texas Disciplinary Rules of Professional Conduct.

The Texas Workers' Compensation Act, § 417.002, requires a worker who recovers in a third-party action to reimburse a carrier for benefits paid for the compensable injury. The carrier thus has a statutory lien on any recovery from a third-party in an amount equal to benefits paid. That lien arises by statute; the carrier need not negotiate with the worker or the worker's attorney to recover that amount. Under settled Texas law, the carrier is entitled to what is called "the first money." This means that the carrier is to be reimbursed first. In other words, neither the worker nor his attorney may take from the recovery until the carrier has been paid in full. *See* Tex. Comm. on Prof'l Ethics, Op. 549 (2003) (citing *Fort Worth Lloyds v. Haygood*, 246 S.W.2d 865 (Tex. 1952)).

Thus, an attorney who deducts his contingency fee before the gross recovery has been reduced by the carrier's lien walks away with a share that is greater than that to which he is entitled. Here, for example, Gray Law deducted its forty percent contingency fee from the gross recovery. Gray Law thus walked away with $1,808,180, including expenses, in first money.

The Texas Supreme Court Professionalism Committee has called this first-money deduction for attorneys' fees unconscionable. Rule 1.04(a) of the Texas Disciplinary Rules of Professional Conduct states:

> A lawyer shall not enter into an arrangement for, charge, or collect an illegal fee or unconscionable fee. A fee is unconscionable if a competent lawyer could not form a reasonable belief that the fee is reasonable.

14

Reading Rule 1.04(a) in conjunction with § 417.002, the Professional Committee has explained that:

> [The worker and his attorney] have no right to the funds due to the compensation carrier. A fee that includes in its calculation funds to which [the worker] has no rights is unconscionable and violates Rule 1.04(a) of the Texas Disciplinary Rules of Professional Conduct. A competent lawyer could not form a reasonable belief that the fee charged under the proposed division is reasonable.

Tex. Comm. on Prof'l Ethics, Op. 549 (2003).

Gray Law complains in this action that it has been wrongly denied a fee to which it is entitled. Apparently it escapes Gray Law's attention that its own fee arrangement was irregular. By deducting its fee before the gross recovery was reduced by Transcontinental's lien, Gray Law appears to have taken more than that to which it was entitled. But more importantly, Gray Law, to its client's detriment, seems to ignore its agreement with Transcontinental – that its client is entitled to a one-third reduction of Transcontinental's lien, not that Gray Law is entitled to claim one third of Transcontinental's subrogation recovery.

It is disappointing that the parties have proceeded oblivious to the rights of the worker for whose benefit the agreement should have been entered. Transcontinental agreed to reduce its lien by one third in exchange for Gray Law's representation of its interests, which expressly it did not do. There is no doubt that Gray Law performed to Transcontinental's benefit. We do note, however, that although its lien was worth approximately $1,646,000, Transcontinental settled for $1,400,000 and agreed to waive its statutory right to suspend future workers' compensation benefits; although Transcontinental

may have been the beneficiary of a "free ride" at Gray Law's expense, Gray Law's client benefitted from Transcontinental's concessions.