Barbara PACHECO, Appellant,

United States of America,
Plaintiff–Appellee,

v.

John SERENDENSKY, a/k/a John
Vitolano, Joseph Foti & Guy
Foti, Defendants.

No. 03–6164.

United States Court of Appeals,
Second Circuit.

Argued Aug. 24, 2004.

Decided Dec. 29, 2004.

Evan Wiederkehr, White Plains, N.Y. (DelBello Donnellan Weingarten Tartaglia Wise & Wiederkehr, White Plains, NY, of counsel), for Appellant.

Daniel S. Ruzumna, Assistant United States Attorney, Southern District of New York, New York City (David N. Kelley, United States Attorney, Gary Stein, Assistant United States Attorney, Southern District of New York, New York City, of counsel), for Appellee.

Before: MESKILL, MINER, and KATZMANN, Circuit Judges.

MESKILL, Circuit Judge.

This appeal requires us to determine the extent of the government's interest in real property forfeited to it by a criminal defendant. In particular, our question is whether, with respect to real property, the use of the term "property" in the criminal forfeiture statute, 21 U.S.C. § 853, refers to a parcel of land or to the defendant's interest in that land, where the two are not the same. Because we conclude that a criminal defendant can only be made to forfeit what was his in the first place, we adopt the latter interpretation.

### BACKGROUND

John Serendensky, the defendant in the underlying criminal action, was indicted on October 5, 2000 on charges of conspiracy to commit bank fraud and conspiracy to launder money stemming from activity alleged to have occurred between 1997 and October 2000. The indictment also contained forfeiture counts alleging that several properties were subject to forfeiture, including Serendensky's interest in a house located at 228 Revere Avenue, Bronx, New York.

This appeal concerns the property located at 228 Revere Avenue (the "Premises"). In short, the Premises—having been purchased jointly by Serendensky and his

wife, Maria Caporale—are now subject to two claims of ownership. The government acquired an interest in the Premises by virtue of Serendensky's criminal activity, which made it subject to forfeiture. Meanwhile, Barbara Pacheco, the appellant, allegedly acquired an interest when she purchased the Premises at a foreclosure sale. Because the time-line of events is critical in determining whose interests in the Premises are valid and to what extent, we set forth the facts as alleged in somewhat greater detail below.

On November 10, 1998, Serendensky and Caporale purchased the Premises as joint tenants after acquiring a $115,000 mortgage from Parmann Mortgage Associates, LLP. The deed of conveyance was recorded with the Office of the City Register of the City of New York, Bronx County, on March 4, 1999. The Parmann mortgage was recorded with the City Register on the same day.

A year and a half later, on August 31, 2000, Serendensky and Caporale refinanced their mortgage with a $168,000 loan from Wilmington National Finance, Inc. The Wilmington mortgage was recorded on November 30, 2000, and afforded Wilmington a first-priority lien against the Premises; we presume that the Parmann mortgage was released as part of the refinancing.

Meanwhile, on October 5, 2000—between the time when Serendensky and Caporale refinanced their mortgage and the time the Wilmington mortgage was actually recorded—the government filed an indictment charging Serendensky with conspiracy to commit bank fraud, in violation of 18 U.S.C. § 371, and conspiracy to launder money, in violation of 18 U.S.C. § 1956(h). Each count of the indictment also had a corresponding forfeiture count alleging the forfeiture of "[a]ny right, title, and interest held by JOHN SERENDENSKY, a/k/a 'John Vitolano,' in the real property and appurtenances known as 228 Revere Avenue, Bronx, New York." The indictment alleged that Serendensky had acquired the Premises with the proceeds of his criminal activity.

On October 25, 2000—still before the Wilmington mortgage was recorded—the government filed a notice of pendency with the City Register. Mirroring the forfeiture counts of the indictment, the notice of pendency explained that the government was seeking forfeiture of Serendensky's interest in the Premises. The text of the notice of pendency is set out in the margin.[1]

Subsequently, on July 19, 2001, the government filed a seven-count superseding information against Serendensky alone charging him with conspiracy to commit bank fraud, see 18 U.S.C. § 371, bank fraud, see id. § 1344, conspiracy to launder money, see id. § 1956(h), conspiracy to

---

1. The Notice of Pendency reads:
   NOTICE IS HEREBY GIVEN that an action has been commenced in this Court [i.e., the United States District Court for the Southern District of New York] upon the filing of an Indictment against the above-named defendants [i.e., Joseph Foti, Guy Foti, and John Serendensky, a/k/a John Vitolano] seeking forfeiture of the interest of defendant John Serendensky, a/k/a/ "John Vitolano," in the premises known generally as 228 Revere Avenue, Bronx, New York and is more particularly described in a deed dated November 10, 1998, from John V. Henry, Individually and as Attorney in Fact for Joseph Henry, John Walsh, Patrick Henry, Ann Henry and William Henry, et. [sic] al. to John Vitolano and Maria Caporale, as Joint Tenants, and is listed as Block 5589, Lot 196 and Section 18 in the land records of Bronx County . . . .
   Please index this notice of pendency against the name of John Serendensky, a/k/a "John Vitolano," and the premises known as 228 Revere Avenue, Bronx, New York.

commit mail fraud, *see id.* § 371, conspiracy to commit robbery in interstate commerce, *see id.* § 1951(a), conspiracy to traffic in counterfeit access devices, *see id.* § 1029(b)(2), and conspiracy to distribute cocaine base, *see* 21 U.S.C. § 846. Like the indictment, the information contained counts corresponding to the bank fraud and money laundering charges alleging forfeiture of Serendensky's interest in the Premises, pursuant to 18 U.S.C. § 982. The information also alleged the forfeiture of additional property—including a car, $65,000 in men's jewelry, and approximately $2,000,000 in cash—not at issue here. On July 19, 2001, the same day that the information was filed, Serendensky pleaded guilty and consented to the forfeitures alleged in the information.

During the time that Serendensky was under indictment and negotiating his plea, he and Caporale defaulted on their mortgage and Wilmington initiated foreclosure proceedings. Wilmington foreclosed notwithstanding the government's notice of pendency and three other notices published in *The New York Times* in April and May 2002.

On May 20, 2002, Plaza Homes, LLC, received a referee's deed in foreclosure for the Premises from Jeffrey D. Klein, Esq.; Plaza Homes, in turn, sold the Premises to Pacheco on the same day for $225,000. Pacheco's deed was recorded with the City Register on June 27, 2002. At the time that she closed on the Premises, Pacheco was aware of the notice of pendency and the ongoing forfeiture proceedings; she proceeded with the purchase anyway.

On October 8, 2002, in an attempt to clear her title, Pacheco filed a third-party petition in the forfeiture court claiming an interest in the Premises. The government promptly moved to dismiss, arguing that the foreclosure sale from which Pacheco's title originated was invalid and that, in any

case, Pacheco was not a bona fide purchaser of the Premises because she was on notice of the government's interest. In an opinion and order dated July 9, 2003, the court below, Koeltl, *J.*, agreed with the government on both counts and dismissed the petition, holding that Pacheco lacked standing because she had no valid interest in the Premises. *See United States v. Serendensky,* 2003 WL 21543519 (S.D.N.Y. July 9, 2003). This appeal followed.

## DISCUSSION

■ On appeal, Pacheco challenges the district court's dismissal of her petition asserting an interest in the Premises. We review the district court's decision *de novo. See United States v. Ribadeneira,* 105 F.3d 833, 834 (2d Cir.1997) (per curiam).

### A.

At the outset, we pause to consider what showing Pacheco is required to make to survive the government's motion to dismiss her petition.

Under the criminal forfeiture statute, a third party may petition for a hearing to adjudicate its alleged interest in property to be forfeited. *See* 21 U.S.C. § 853(n)(2). At that hearing, both the petitioner and the government are entitled to present evidence, *see id.* § 853(n)(5), with the burden ultimately on the petitioner to prove her claim by a preponderance of the evidence, *see id.* § 853(n)(6).

Notwithstanding this statutory scheme, courts have determined that a hearing is not always necessary to adjudicate a third party's claims. Where a petitioner is not able to demonstrate a *prima facie* entitlement to relief, courts have routinely dismissed third-party petitions without a hearing. *See, e.g., United States v. Lavin,* 942 F.2d 177, 179–80 (3d Cir.1991); *United States v. Campos,* 859 F.2d 1233, 1240 (6th

352

Cir.1988). The district court, relying on such cases, held that Pacheco failed to make the required *prima facie* showing. *See Serendensky*, 2003 WL 21543519, at *2.

In 2000, however, Congress adopted Federal Rule of Criminal Procedure 32.2 governing proceedings relating to criminal forfeiture, including third-party petitions. *See* Fed.R.Crim.P. 32(k)(2). Prior to the 2000 amendment, forfeiture was governed by Rule 32(d), which made no mention of third-party proceedings. Under the new Rule 32.2, when a third party files a petition asserting an interest in property to be forfeited, the court must conduct an "ancillary proceeding." Fed.R.Crim.P. 32.2(c)(1). That ancillary proceeding, although occurring in the context of criminal forfeiture, closely resembles a civil action:

> (A) In the ancillary proceeding, the court may, on motion, dismiss the petition for lack of standing, for failure to state a claim, or for any other lawful reason. For purposes of the motion, the facts set forth in the petition are assumed to be true.
>
> (B) After disposing of any motion [to dismiss] and before conducting a hearing on the petition, the court may permit the parties to conduct discovery in accordance with the Federal Rules of Civil Procedure if the court determines that discovery is necessary or desirable to resolve factual issues. When discovery ends, a party may move for summary judgment under Federal Rule of Civil Procedure 56.

Fed.R.Crim.P. 32.2(c)(1)(A) & (B). The Advisory Committee explained that because ancillary proceedings can be enormously complicated, "procedures akin to those available under the Federal Rules of Civil Procedure," such as motions to dismiss, discovery, and motions for summary judgment, "should be available to the court

and the parties to aid in the efficient resolution of the claims." Fed.R.Crim.P. 32.2 advisory committee's note to subdivision (c).

■■■ Thus, under Rule 32.2, a motion to dismiss a third-party petition in a forfeiture proceeding prior to discovery or a hearing should be treated like a motion to dismiss a civil complaint under Federal Rule of Civil Procedure 12(b). *See United States v. BCCI Holdings (Luxembourg), S.A.*, 961 F.Supp. 282, 285 (D.D.C.1997) (cited in Fed.R.Crim.P. 32.2 advisory committee's note to subdivision (c)). Only after some discovery has taken place may a party move for summary judgment; at that point the petitioner would be required to produce evidence supporting a *prima facie* case of entitlement, but not before. The district court therefore erred by requiring Pacheco to make a *prima facie* showing to defeat the government's motion to dismiss.

Accordingly, in reviewing Pacheco's petition we will assume that her allegations are true, *see* Fed.R.Crim.P. 32.2(c)(1)(A); *see also Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993), and affirm the dismissal " 'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations,' " *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)).

**B.**

In dismissing Pacheco's petition, the district court made two alternative rulings, either one of which, if correct, would require us to affirm. But both aspects of the court's decision presuppose that the reference to "property" in the criminal forfei-

ture statute—which specifies that anyone convicted of certain crimes "shall forfeit to the United States . . . any property constituting, or derived from, any proceeds" of their crime, 21 U.S.C. § 853(a) & (1)—refers to an undivided piece of land, as opposed to the criminal defendant's interest in that land. *See Serendensky,* 2003 WL 21543519, at *7 ("the criminal forfeiture statute does not provide for partial forfeitures of [real] property").

*First,* the court held that the foreclosure sale that preceded Pacheco's purchase of the Premises was invalid. Under the criminal forfeiture statute, no party may

> commence an action at law or equity against the United States concerning the validity of his alleged interest in the property subsequent to the filing of an indictment or information alleging that the property is subject to forfeiture under this section.

21 U.S.C. § 853(k)(2). Because the indictment was filed on October 5, 2000, while the foreclosure proceeding likely took place in late 2001 or early 2002, the court held that the foreclosure proceeding was invalid. The court then held that Pacheco had no legal interest in the Premises because her title originated from the invalid foreclosure sale. *See Serendensky,* 2003 WL 21543519, at *3–4.

*Second,* the court held that even if the foreclosure sale had not been barred, Pacheco did not meet the statutory requirements to intervene in the forfeiture proceeding. Under the statute, one of two conditions must adhere for an intervenor to receive relief. The intervenor must either (a) have an interest in the property that is superior to the criminal defendant's because it arose prior to "the time of the commission of the acts [that] gave rise to the forfeiture," 21 U.S.C. § 853(n)(6)(A), or (b) be a "bona fide purchaser for value" of the property who was "reasonably without

cause to believe that the property was subject to forfeiture" at the time of purchase, *id.* § 853(n)(6)(B). Because Pacheco obtained her asserted interest in the Premises after the conduct giving rise to the forfeiture, the first condition could not apply. We are only concerned with whether Pacheco was a bona fide purchaser of the Premises.

■ The district court found that Pacheco was not a "bona fide purchaser" under New York law. *See United States v. Harris,* 246 F.3d 566, 571 (6th Cir.2001) (whether a petitioner is a bona fide purchaser is a question appropriately determined by reference to state law); *see also United States v. Frykholm,* 362 F.3d 413, 416 (7th Cir.2004). To be a bona fide purchaser, a party "must have no knowledge of the outstanding lien and win the race to the recording office." *Jenkins v. Stephenson,* 745 N.Y.S.2d 30, 32, 293 A.D.2d 612, 614 (2d Dep't 2002) (internal quotation marks omitted). According to the district court, Pacheco failed both prongs of this test. *First,* she knew about the government's interest in the Premises. She had both constructive notice (by virtue of the notice of pendency) and actual notice (because her lawyer informed her of the notice prior to closing). *Second,* she did not win the race to the recording office, as her deed was not filed until June 27, 2002, almost two years after the government filed its notice. Because Pacheco did not make a *prima facie* showing that she was entitled to relief from the order of forfeiture, the district court dismissed her petition.

We already have explained that it was error, on the government's motion to dismiss, to require Pacheco to make a *prima facie* showing that she was a bona fide purchaser. However, if the district court's understanding of the meaning of "property" was correct, it nonetheless would have

correctly dismissed the petition because Pacheco alleged specific facts—such as her knowledge of the notice of pendency—that put a lie to her general allegation that she was a bona fide purchaser. *See Conn v. GATX Terminals Corp.*, 18 F.3d 417, 419 (7th Cir.1994) (Posner, *C.J.*) ("The detail of the complaint enabled the district judge to dismiss the suit on motion under Rule 12(b)(6) . . . , thwarting what might, for all we know, have been a fruitful program of pretrial discovery for the plaintiff. The plaintiff pleaded himself out of court."). *See generally Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*, 757 F.2d 523, 528 (2d Cir.1985) ("A party's assertion of fact in a pleading is a judicial admission by which [the party] normally is bound throughout the course of the proceeding.").

Indeed, all of the district court's conclusions follow as a matter of logic *if* we were to accept, as the government urges, that Serendensky forfeited the entire Premises. But that assumption is far from unassailable, especially because the government, throughout, alleged only the forfeiture of Serendensky's interest in the Premises. We are therefore required to determine whether the criminal forfeiture statute permits partial forfeitures of real property.

### C.

■ We begin, as we must, with the language of the criminal forfeiture statute. *See, e.g., Cazenovia College v. Renshaw (In re Renshaw)*, 222 F.3d 82, 88 (2d Cir. 2000). The plain language of the statute does not expressly preclude partial forfeitures; it provides that anyone convicted of certain offenses "shall forfeit to the United States . . . any property constituting, or derived from, any proceeds the person ob-

tained, directly or indirectly, as the result of such violation," 21 U.S.C. § 853(a) & (1). The statute further defines "property" to include "real property, including things growing on, affixed to, and found in land," *id.* § 853(b)(1), as well as "tangible and intangible personal property, including rights, privileges, interests, claims, and securities," *id.* § 853(b)(2).

The term property thus encompasses both real property itself as well as "interests" and "claims," which presumably include, respectively, interests in or claims to real property. It is unclear, where real property is involved, whether the statute compels forfeiture of a specific parcel of real property as opposed to an interest in that parcel.

■ In view of this ambiguity, we note that reading the criminal forfeiture statute to prohibit partial forfeitures raises serious constitutional concerns. If partial forfeitures are forbidden, then a criminal's activity may result in the forfeiture of an innocent third party's interest in property. The government's acquisition of an entire tract of real property in forfeiture proceedings may thus constitute an unconstitutional taking of a third party's interest or a deprivation of that party's property without due process, in violation of the Fifth Amendment. *See* U.S. Const. amend. V; *see also United States v. Totaro*, 345 F.3d 989, 999 (8th Cir.2003) ("If this court were to deem forfeited the entire estate despite a valid claim of partial ownership by a third party, . . . [i]t would . . . punish the third party, against whom no jury has returned a verdict of guilt, and may therefore raise constitutional questions of a whole different order.") (citation omitted); [2] *United States v. One 1976*

---

2. Although *Totaro* was concerned with the forfeiture provision of the Racketeer Influenced and Corrupt Organizations Act, 18

U.S.C. § 1963(1), we have held that "the plain language" of the criminal forfeiture statute, 21 U.S.C. § 853(n)(6), and section

*Chevrolet Corvette,* 477 F.Supp. 32, 35 (E.D.Pa.1979) (holding that operation of forfeiture statute against bona fide purchaser violates Fifth Amendment). *Cf. Calero–Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 679–80 & 689–90, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974). The canons of construction, however, require us to construe statutes in such a way as to avoid raising such constitutional concerns. *See INS v. St. Cyr,* 533 U.S. 289, 299–300, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001).

We also note that courts have consistently construed the *civil* forfeiture statute, 21 U.S.C. § 881, to permit partial takings. *See, e.g., United States v. One Lincoln Navigator 1998,* 328 F.3d 1011, 1015 (8th Cir.2003); *United States v. 198 Training Field Road,* 2004 WL 1305875, at *2–3 (D.Mass. June 14, 2004); *United States v. Real Property Located at Incline Village,* 976 F.Supp. 1327, 1342–43 (D.Nev. 1997). Although we recognize that the criminal and civil forfeiture provisions are not identical, *see United States v. $359,500 in United States Currency,* 828 F.2d 930, 933 (2d Cir.1987); *United States v. $2,500 in United States Currency,* 689 F.2d 10, 15–16 (2d Cir.1982), we join those circuits that have recognized Congress' intention to vest in the government the same substantive rights under the two statutes, notwithstanding their technical differences. *See United States v. Littlefield,* 821 F.2d 1365, 1367 (9th Cir.1987); *see also United States v. Smith,* 966 F.2d 1045, 1053–54 (6th Cir.1992).

In light of the constitutional-avoidance canon and the parallel construction of the criminal and civil forfeiture statutes, we agree with those courts that have suggested that the criminal forfeiture statute, 21 U.S.C. § 853, permits partial forfeitures of real property. *See Totaro,* 345 F.3d at 999; *United States v. O'Dell,* 247 F.3d 655, 680 (6th Cir.2001); *United States v. Kennedy,* 201 F.3d 1324, 1329 (11th Cir.2000); *Lavin,* 942 F.2d at 185; *United States v. Certain Real Property Located at 2525 Leroy Lane, West Bloomfield, Michigan,* 910 F.2d 343, 350–51 (6th Cir.1990). Although none of those courts explicitly held that the criminal forfeiture statute permits partial forfeitures, we do so now.

■ No other result seems reasonable. Although partial forfeitures may occasionally make for strange bedfellows—such as making the government co-owners of real property with the spouse of a criminal defendant—the alternative could give the government an undeserved windfall and deny an innocent third party her valid property interest. The purposes of the forfeiture penalty are to punish, deter and disempower criminals, *see United States v. Morgan,* 224 F.3d 339, 343 (4th Cir.2000); *United States v. Rogers,* 102 F.3d 641, 648 (1st Cir.1996), aims which are not furthered by taking an innocent owner's share. Indeed, we fail to see either how *any* legitimate interest could be furthered by reading the statute to forbid partial forfeitures or how Congress could have intended to forbid them.

### D.

■ Applying this reading of the criminal forfeiture statute, we conclude that Serendensky—consistent with the government's notice of pendency as well as the information to which Serendensky pleaded—could only have forfeited his interest in the Premises. If Serendensky forfeited only his interest, then the foreclosure sale was valid with respect to Caporale's inter-

1963(1) are so similar "as to warrant similar interpretation." *Ribadeneira,* 105 F.3d at 835

n. 2.

est. Because the government only acquired Serendensky's interest in the Premises, *see, e.g., O'Dell,* 247 F.3d at 680, Wilmington was free to foreclose on the remainder. *See* N.Y. Real Prop. Acts. Law § 1351 (permitting partial foreclosure); *see also Golden v. Ramapo Improvement Corp.,* 432 N.Y.S.2d 238, 241–42, 78 A.D.2d 648, 650 (2d Dep't 1980) (citing cases). That Wilmington purported to foreclose on the entire Premises as opposed to only Caporale's share is of no moment. *See Kline v. Pane,* 133 N.E.2d 447, 449, 1 N.Y.2d 15, 19, 150 N.Y.S.2d 10, 13 (1956). Because Wilmington legitimately foreclosed on Caporale's interest, the foreclosure was not "an action at law or equity against the United States concerning the validity of [Wilmington's] alleged interest in the property," 21 U.S.C. § 853(k)(2), and was valid.

If Wilmington validly foreclosed on Caporale's interest in the Premises, the only remaining question is whether Pacheco has adequately alleged that she was a "bona fide purchaser for value" of that interest who was "reasonably without cause to believe that the property [*i.e.,* Caporale's interest] was subject to forfeiture" at the time of purchase, *id.* § 853(n)(6)(B). She has.

Pacheco was a bona fide purchaser, according to her allegations, because she had "no knowledge of the outstanding lien" against the unforfeited interest in the Premises "and [won] the race to the recording office." *Jenkins,* 745 N.Y.S.2d at 32, 293 A.D.2d at 614 (internal quotation marks omitted). The notice of pendency refers only to "the interest of defendant John Serendensky" in the Premises. Pacheco had no notice of any purported lien against Caporale's interest.

Similarly, Pacheco allegedly won the "race to the recording office" because she recorded her interest in at least Caporale's share of the Premises on June 27, 2002. The government only recorded the notice of pendency, which did not reference Caporale's interest. For the same reasons, Pacheco was "reasonably without cause to believe that the property," defined as Caporale's interest, "was subject to forfeiture," 21 U.S.C. § 853(n)(6)(B).

## CONCLUSION

For the reasons just given, the judgment of the district court is vacated and remanded for further proceedings. As is the case with any motion to dismiss, however, we emphasize that we have in no way passed on the merits of Pacheco's claim. *See Chanayil v. Gulati,* 169 F.3d 168, 171 (2d Cir.1999). We hold today only that Pacheco is entitled to take evidence—either through a course of discovery or in a hearing—so that she may attempt to prove the validity of her interest in the Premises.