**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellant,*

v.

CAROL ANN COX,

*Party-in-Interest-Appellee,*

and

MARK S. COX,

*Defendant.*

No. 07-4906

Appeal from the United States District Court
for the Western District of North Carolina, at Charlotte.
Lacy H. Thornburg, District Judge.
(3:05-cr-00092-GCM)

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

CAROL ANN COX,

*Party-in-Interest-Appellant,*

and

MARK S. COX,

*Defendant.*

No. 08-4680

Appeal from the United States District Court
for the Western District of North Carolina, at Charlotte.
Graham C. Mullen, Senior District Judge.
(3:05-cr-00092-GCM-1)

Argued: May 13, 2009

Decided: August 5, 2009

Before TRAXLER, Chief Judge, GREGORY, Circuit Judge,
and Frederick P. STAMP, Jr., Senior United States District
Judge for the Northern District of West Virginia,
sitting by designation.

_____

Reversed and remanded by published opinion. Chief Judge
Traxler wrote the opinion, in which Judge Gregory and Senior
Judge Stamp joined.

_____

**COUNSEL**

**ARGUED:** William A. Brafford, OFFICE OF THE UNITED
STATES ATTORNEY, Charlotte, North Carolina, for the
United States. Amy Elizabeth Simpson, JAMES MCELROY
& DIEHL, PA, Charlotte, North Carolina, for Carol Ann Cox.
**ON BRIEF:** Gretchen C. F. Shappert, United States Attorney,
Charlotte, North Carolina, for the United States. Preston O.
Odom, JAMES MCELROY & DIEHL, PA, Charlotte, North
Carolina, for Carol Ann Cox.

_____

## OPINION

TRAXLER, Chief Judge:

Carol Cox filed a third-party petition asserting a claim to the proceeds of a bank account seized by the government in the criminal forfeiture proceedings against Mark Cox, Carol's ex-husband. The district court ruled in favor of Carol and subsequently awarded her attorney's fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C.A. § 2412 (West 2006). The government appeals, arguing that the district court erred by awarding attorney's fees to Carol. Because we agree that Carol was not entitled to a fee award under EAJA, we reverse the district court's order and remand for further proceedings.[1]

I.

The government began investigating Mark, a chiropractor, and others in late 2002; Mark became aware of the investigation in early 2003. The investigation initially focused on health-care fraud, but later expanded to include bank fraud, based on misrepresentations Mark made in connection with a loan from Wachovia Bank. On April 8, 2005, Mark pleaded guilty to charges of bank fraud, health-care fraud, and money laundering. In his plea agreement, Mark agreed to forfeit as direct proceeds of the bank fraud more than $1,000,000 contained in an account at BB&T. *See* 18 U.S.C.A. § 982(a)(2)(A) (West 2000) (authorizing criminal forfeiture of proceeds from the commission of bank fraud). On April 11,

---

[1]Carol filed a cross-appeal (No. 08-4680) challenging the district court's order of June 10, 2008, which denied her petition for relief from a writ of execution of the restitution judgment. The government has abandoned its opposition to Carol's claim and has conceded that Carol is entitled to the funds at issue in that order. We therefore reverse the district court's order of June 10, 2008, and direct the government and the district court on remand to take whatever actions are necessary to release the funds at issue to Carol.

2005, the government obtained a preliminary order of forfeiture and executed that order by seizing the BB&T account.

While the investigation of Mark was proceeding, the Coxes' marriage began faltering. Carol hired an attorney in December 2003, and the Coxes formally separated in January 2004. In March 2004, the Coxes entered into a "collaborative law agreement" that required them to submit to binding arbitration if they could not reach agreement on property distribution and other issues. They failed to reach an agreement, and the matter proceeded to arbitration.

On February 24, 2005, the arbitrator issued a decision awarding Carol $812,000 originally contained in a Wachovia money market account but later moved into an account at First Charter Bank. Two weeks after the arbitration award was issued, Mark transferred the balance of the First Charter account into the BB&T account. The proceeds from the original Wachovia account were thus seized by the government when it executed the preliminary order of forfeiture on the BB&T account.

Carol filed a petition asserting her interest in the proceeds of the BB&T account. The district court ruled in her favor, concluding that Carol qualified as a bona fide purchaser for value of the funds first contained in the Wachovia account and seized from the BB&T account. The government appealed but later withdrew its notice of appeal. Carol thereafter sought an award of attorneys fees from the government under EAJA, arguing that the government's litigation position was not substantially justified. The district court agreed and awarded Carol fees in the amount of $40,000. This appeal followed.

II.

In civil actions brought by or against the government, EAJA authorizes an award of attorney's fees to the prevailing

party unless the government's position in the course of the proceedings was "substantially justified." 28 U.S.C.A. § 2412(d)(1)(A). The government's position is substantially justified if it is "'justified in substance or in the main'—that is, justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). The government's position must be "more than merely undeserving of sanctions for frivolousness," *id.* at 566, and must instead have a "'reasonable basis both in law and fact,'" *id.* at 565. The question, then, is whether the government was substantially justified in opposing Carol's claim to the funds in the BB&T account.

A third party may recover assets otherwise subject to criminal forfeiture by showing that she was "a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section." 21 U.S.C.A. § 853(n)(6)(B) (West 1999).[2] The government's position during the forfeiture proceedings was that Carol could not be viewed as a purchaser for value of the BB&T funds, and that, in any event, she had reason to believe that the assets were subject to forfeiture, both of which would preclude her from qualifying as a bona fide purchaser within the meaning of the statute.

As used in the forfeiture statute, "'bona fide purchaser for value' must be construed liberally to include all persons who give value to the defendant in an arms'-length transaction with the expectation that they would receive equivalent value in return." *United States v. Reckmeyer*, 836 F.2d 200, 208 (4th Cir. 1987). In its ruling awarding Carol the BB&T funds, the district court concluded that Carol gave value with the expectation of receiving equivalent value in return when she and

---

[2]Section 982, which authorizes criminal forfeiture in cases of bank fraud, incorporates the procedures set forth in § 853. *See* 18 U.S.C.A. § 982(b)(1).

Mark entered into the collaborative law agreement obligating them to go to binding arbitration if they were unable to otherwise resolve the equitable distribution issues. According to the district court, Carol, through that agreement, gave up her claims to any marital property awarded to Mark, just as Mark gave up his claim to any property awarded to Carol. And while the agreement did not include specific bargaining over the Wachovia account, the district court did not believe that was necessary for Carol to be considered a bona fide purchaser of the Wachovia account.

To qualify as a bona fide purchaser under § 853, a petitioner must have given value *for the property subject to forfeiture*. *See* 21 U.S.C.A. § 853(n)(2) ("Any person . . . asserting a legal interest *in property which has been ordered forfeited* . . . may . . . petition the court for a hearing to adjudicate the validity of his alleged interest in the property." (emphasis added)); *United States v. Schecter*, 251 F.3d 490, 496 (4th Cir. 2001) ("Section 853 requires more than a showing of a legal interest in the debtor's property. *It requires that the interest exist in the property subject to forfeiture.*" (internal quotation marks omitted)). In *Reckmeyer*, we recognized that general creditors, who cannot claim a specific interest in any particular asset, may nonetheless qualify as bona fide purchasers for value in cases where the criminal defendant's entire estate has been forfeited to the government. *See Schecter*, 251 F.3d at 496 ("[I]n *Reckmeyer*, the claimants were only able to recover because the defendant's entire estate had been forfeited, which in practical terms meant that petitioners' interests necessarily lay within that estate." (internal quotation marks and alterations omitted)). The forfeiture in this case involved substantially less than Mark's entire estate, and the collaborative law agreement simply obligated the Coxes to submit their property issues to binding arbitration and gave neither party a specific interest in any particular asset. The government thus had a reasonable basis in fact and law to contend that the agreement at most made Carol a general

creditor but was insufficient to make her a bona fide purchaser for value under § 853. *See id.* at 495-96.

And even assuming that the arbitration award itself gave Carol the specific interest in the specific asset as required by § 853, it was not unreasonable for the government to question Carol's knowledge of the possibility of forfeiture. Carol knew well before the arbitration proceedings began that Mark was under investigation. And more specifically, approximately a year before the arbitration award, Mark's attorney wrote a letter to Carol's attorney explaining in a fair amount of detail that the assets to be equitably distributed as part of the divorce were subject to forfeiture and seizure. These facts provided the government with a factual and legal basis for arguing that Carol was not a bona fide purchaser for value because she reasonably had "cause to believe that the property was subject to forfeiture." 21 U.S.C.A. § 853(n)(6)(B). Whether or not these facts were enough to establish as a matter of law that Carol had knowledge,[3] the facts were sufficient to provide the government with a reasonable basis for challenging Carol's claim to the funds. *See Pierce*, 487 U.S. at 566 n.2 ("[A] position can be justified even though it is not correct. . . ."); *United States v. B&M Used Cars*, 860 F.2d 121, 124 (4th Cir. 1988) ("The fact that the government failed to achieve forfeiture of B&M raises no presumption that its position was not substantially justified.").

In our view, then, the government's litigation position with regard to the legal question of whether Carol was a bona fide purchaser for value was substantially justified. This conclusion, however, does not end our inquiry, because EAJA

---

[3]The district court found it important that Carol knew Mark was being investigated for health-care fraud, but did not know he was being investigated for bank fraud, the charge that ultimately led to the forfeiture of the BB&T account. We question the legal significance of this fact, given that the statute focuses only on whether the claimant has "cause to believe that the property was subject to forfeiture," 21 U.S.C.A. § 853(n)(6), not whether the claimant knew the particular statutory basis for the forfeiture.

requires us to consider the totality of the government's con-
duct, including the reasonableness of the government's
actions in bringing about the litigation. *See Roanoke River
Basin Ass'n v. Hudson*, 991 F.2d 132, 138 (4th Cir. 1993)
("[I]t is clear that [through EAJA,] Congress intended to
address governmental misconduct whether that conduct pre-
ceded litigation, compelling a private party to take legal
action, or occurred in the context of an ongoing case through
prosecution or defense of unreasonable positions.").

In this case, the district court's determination that the gov-
ernment's position was not substantially justified was based
more on the court's disdain for the government's tactics in
even seeking forfeiture of the BB&T account than its dis-
agreement with the merits of the government's legal argu-
ments. The district court believed that the government should
have informed Carol that it was investigating Mark for bank
fraud and should have apprised her of the status of the plea
negotiations, and the court faulted the government for seeking
forfeiture of the BB&T account when it could have instead
sought forfeiture of assets that had been assigned to Mark in
the arbitration award. The district court noted that Mark's
transfer of the contested funds from the First Charter account
into the BB&T account violated a state-issued injunction and
that Mark moved the money into the BB&T account in an
attempt to use funds awarded to Carol to satisfy his forfeiture
obligation. The district court concluded that the government
"turned a blind eye" to that misconduct and became culpable
itself by seizing the account into which the funds had been
transferred. In our view, however, the district court's criti-
cisms of the government's approach to this case fail to take
into account the manner in which forfeiture proceedings oper-
ate or the government's obligations during the course of a
criminal investigation.

Preliminarily, we note that the government has no obliga-
tion to discuss ongoing criminal investigations but instead is
required to maintain the secrecy of grand jury proceedings,

*see generally* Fed. R. Crim. P. 6(e)(2)(B)(vi), and we are aware of no legal authority that would require (or even encourage) the government to apprise third parties of the status of plea negotiations. The government's failure to inform Carol of the bank fraud investigation or its status therefore cannot be viewed as improper.

Moreover, the district court's analysis fails to recognize that the function of ancillary forfeiture proceedings is to resolve third-party claims of ownership like those asserted in this case by Carol. As we explained in *United States v. McHan*, 345 F.3d 262 (4th Cir. 2003), under § 853, title to the proceeds of criminal conduct vests with the government at the time the criminal act is committed. *See id.* at 268; *see also* 21 U.S.C.A. § 853(c). Third parties claiming an interest in the property have no right to intervene in the criminal proceeding or to receive notice of the forfeiture proceedings before the entry of a preliminary order of forfeiture. *See* 21 U.S.C.A. § 853(k); *McHan*, 345 F.3d at 269. Notice of the preliminary order of forfeiture is provided after conviction or guilty plea, at which time third parties may file a petition under § 853(n) asserting their claims to the property. *See* 21 U.S.C.A. § 853(n); Fed. R. Crim. P. 32.2(c). "The petition authorized by § 853(n) is the *exclusive* avenue through which a third party may protect his interest in property that has been subject to a forfeiture order." *McHan*, 345 F.3d at 269 (emphasis added).

The actions of the government that were criticized by the district court thus were actions that were largely compelled by statute and rule. The government's investigation indicated that the funds in the BB&T account were connected to the bank fraud, and Mark stipulated in his plea agreement that a portion of the funds in the BB&T account were direct proceeds of the bank fraud to which he pleaded guilty. The preliminary order of forfeiture was thus properly entered, and the government properly seized the BB&T account at that time. Even if the government at that point knew that Carol claimed an interest

specifically in the BB&T account, the government's actions were entirely proper — Rule 32.2 *requires* the issuance of a preliminary order of forfeiture when the proper nexus is shown, whether or not a third party claims an interest in the property, *see* Fed. R. Crim. P. 32.2(b)(2) ("If the court finds that property is subject to forfeiture, it *must* promptly enter a preliminary order of forfeiture . . . *without regard to any third party's interest* in all or part of it. Determining whether a third party has such an interest *must be deferred* until any third party files a claim in an ancillary proceeding under Rule 32.2(c)." (emphasis added)), and § 853 specifically contemplates that the government will preliminarily seize property in which others are known to claim an interest, *see* 21 U.S.C.A. § 853(n)(1) (authorizing the government to provide direct notice of the preliminary order of forfeiture "to any person *known to have alleged an interest in the property* that is the subject of the order of forfeiture" (emphasis added)).

The arbitration award assigning the Wachovia funds to Carol simply did not conclusively resolve the ownership question, as the district court seemed to conclude, and the government cannot be faulted for following the procedure established to resolve third-party ownership claims. And while other assets may have been available for forfeiture, the government's investigation traced the proceeds of the bank fraud to the BB&T account. The contents of the BB&T account thus amounted to direct proceeds of the crime to which Mark pleaded guilty, and the government did not act improperly by seizing the account and waiting for the ancillary proceedings to determine whether Carol had a superior claim to the proceeds.

A district court has broad discretion when determining whether fees should be awarded under EAJA, and the court's decision to award fees is thus entitled to deference. *See Pierce*, 487 U.S. at 562-63. The degree of deference required under *Pierce*, however, is "considerably short of a simple, accept-on-faith, rubber-stamping of district court decisions on

this issue." *United States v. Paisley*, 957 F.2d 1161, 1166 (4th Cir. 1992). In this case, the government's position on the legal merits of Carol's bona-fide-purchaser claim had a reasonable basis in fact and law, and the actions that the district court believed warranted a fee award were completely consistent with (if not compelled by) the forfeiture statute and governing rules. We are therefore constrained to conclude that the district court abused its discretion by concluding that the government's conduct leading up to and during litigation of Carol's interest in the BB&T account was not substantially justified. *See Roanoke River Basin Ass'n*, 991 F.3d at 139 ("[W]hen determining whether the government's position in a case is substantially justified, we look beyond the issue on which the petitioner prevailed to determine, from the totality of circumstances, whether the government acted reasonably in causing the litigation or in taking a stance during the litigation. In doing so, it is appropriate to consider the reasonable overall objectives of the government and the extent to which the alleged governmental misconduct departed from them.").

### III.

Accordingly, for the foregoing reasons, we hereby reverse the district court's order awarding Carol fees under EAJA, and we remand for further proceedings consistent with this opinion.

*REVERSED AND REMANDED*