UNITED STATES OF AMERICA,
Plaintiff,

v.

AN INTEREST IN THE REAL PROPERTY LOCATED AT 2101 LINCOLN BLVD., LOS ANGELES, CALIFORNIA, Defendant.

[And Other Defendants Named in the Consolidated Cases]

Sohela Naimi, Claimant,

Naimis LLC, Claimant.

Nos. CV 05–5353 (PJWx), CV 05–5354 (PJWx), CV 05–5356 (PJWx), CV 05–5357 (PJWx).

United States District Court,
C.D. California.

July 20, 2010.

Monica E. Tait, Greg Parham, AUSA-Office of U.S. Attorney, Los Angeles, CA, for Plaintiff.

Marc Scott Harris, Scheper Kim & Harris LLP, Los Angeles, CA, Alexander H. Cote, Scheper Kim and Overland LLP, Los Angeles, CA, for Claimant.

---

ORDER REGARDING THE COURT'S IN–TRIAL RULING REGARDING THE INTERPRETATION OF THE STATUTORY INNOCENT OWNER DEFENSE

STEPHEN V. WILSON, District Judge.

## I. Introduction

This is an asset forfeiture case in which the Government seeks to forfeit an interest in four commercial properties owned by the Claimants Sohela Naimi and Naimis, LLC ("the Claimants"). The parties stipulated that the Claimants purchased the defendant properties at least in part with money that had been the subject of currency violations under 31 U.S.C. § 5324(a)(1) and (a)(3). The only issue for trial, therefore, was whether the Claimants could prove that they were innocent owners within the meaning of 18 U.S.C. § 983(d)(3)(A), so as to avoid forfeiture. A jury trial on that issue was held on July 13–14, 2010, and the jury found in favor of the Government.

The Court issues the following Order to explain the basis for its ruling during trial regarding the scope of the statutory innocent owner defense.

## II. Innocent Owner Defense

Claimants seek protection under the "innocent owner" defense articulated in 18 U.S.C. § 983(d)(3)(A), which provides:

> With respect to a property interest acquired after the conduct giving rise to the forfeiture has taken place, the term "innocent owner" means a person who, at the time that person acquired the interest in the property—
>
> (i) was a bona fide purchaser or seller for value (including a purchaser or seller of goods or services for value); and
>
> (ii) **did not know and was reasonably without cause to believe that the property was subject to forfeiture.**

18 U.S.C. § 983(d)(3)(A) (emphasis added). The first element of the defense—that the Claimants were bona fine purchasers for value of the subject properties—was conceded by the Government. Thus, the only debate was whether the Claimants did not know or were reasonably without cause to believe that the property was "subject to forfeiture."

During trial, the Claimants argued that the phrase "know ... that the property was subject to forfeiture" means that the Claimants must have knowledge that, under the applicable law, the Government can forfeit the subject property due to the property's connection to criminal activity, and that the Government in fact intends to do so. In counsel's words, the Claimants must know that "the wolves are at the door." Under this theory, the Claimants argued that the innocent owner defense is not defeated where the Claimants merely have knowledge of the underlying criminal activity that gives rise to forfeiture; rather, the Claimants must know that, under the law, such activity allows the Government to forfeit property connected to the

activity.[1] In short, according to the Claimants, unless they have knowledge of the forfeiture laws, they are innocent owners.[2]

For the reasons stated below, the Claimants' argument fails.

### A. The Argument Was Not Timely Raised

As an initial matter, the Court notes that Claimants did not properly raise this critical issue of statutory interpretation prior to trial. Claimants' Memorandum of Contentions of Fact and Law (hereinafter, the "Pretrial Memorandum") submitted in preparation for the Rule 16 Pretrial Conference contains absolutely no discussion of this legal argument. Indeed, in the Pretrial Memorandum, when Claimants outlined the evidence and facts they would introduce at trial in support of their innocent owner defense, *all of the evidence* was related to whether the Claimants had ***knowledge of the underlying criminal act***—i.e., structuring.[3] Claimants made *no mention* of any evidence or testimony relevant to whether the Claimants knew that

structuring would give rise to the Government's right to forfeit property. Further, the Claimants also stated in the Pretrial Memorandum: "Claimants do not expect any significant disputes regarding the legal standards applicable to this case." (Claimants' Memorandum of Contentions of Fact and Law at 4.) Finally, Claimants did not raise this issue orally during the pretrial conference.

Instead of raising the argument prior to trial, Claimants raised it on the final day of trial while the jury was out of the courtroom on a 10–minute morning recess. This approach is manifestly inappropriate. By failing to file a complete and accurate Pretrial Conference Memorandum of Fact and Law, Claimants violated Fed. R. Civ. P. 16, which gives rise to appropriate sanctions under Fed. R. Civ. P. 37(b)(2)(A). Claimants' conduct also prejudiced the Government's ability to adequately respond to the argument; caused substantial disruption and delay to the jury and Court; and, most importantly, impaired the Court's ability to thoroughly research the

---

1. Of course, not all criminal activity gives rise to forfeiture. Thus, Claimants' counsel emphasized that most ordinary lay persons would not know that currency structuring offenses under 31 U.S.C. § 5324 give rise to the Government's right to forfeit the structured funds (or property purchased therewith). Thus, the argument goes that Claimants, like most everyone, would be innocent owners of property purchased with funds that had been structured.

2. The Government disputes this reading of the statute. The Government argues that the innocent owner defense fails where the claimants have knowledge of the underlying criminal activity that gives rise to forfeiture and know that the property is somehow connected (or traceable) to that activity, without regard to whether the claimant knew the property could be forfeited as a result of that activity.

3. Specifically, Claimants made the following contentions in support of their innocent owner defense:

A. The Naimi family provided cash they had on hand to Rashtian.
B. Neither Sohela Naimi nor any member of Naimis LLC knew how Rashtian handled the funds he was provided. Specifically, none of the Naimis were aware that Rashtian was structuring his deposits to avoid the Currency Transaction Report requirement.
C. At some point after Rashtian received the cash, the funds were returned to Claimants via wire transfers primarily to Sohela Naimi's bank accounts.
D. Neither Sohela Naimi nor any member of Naimis LLC provided any funds to Rashtian with the intent or for the purpose of having Rashtian deposit funds in amounts less than $10,000.
E. Neither Rashtian nor any of his alleged co-conspirators ever revealed to Claimants that Rashtian was structuring funds.
(Memorandum of Contentions of Fact and Law at 3.)

relevant legislative history and case law and apply the law faithfully. A reasonable and appropriate sanction would be to bar Claimants from even raising the legal argument. *See, e.g., Smith v. Gulf Oil Co.,* 995 F.2d 638, 642–44 (6th Cir.1993) (trial court correctly precluded plaintiffs' use of legal theory that was not raised until during trial); *Veranda Beach Club Ltd. P'ship v. Western Sur. Co.,* 936 F.2d 1364, 1371 (1st Cir.1991) (affirming dismissal of plaintiff's claim where none of plaintiff's pretrial submissions alluded to that theory); *Erff v. MarkHon Indus., Inc.,* 781 F.2d 613, 618 (7th Cir.1986) (trial court correctly precluded plaintiffs' legal theory that was not clearly pleaded in complaint and was not discussed in final pretrial conference legal memorandum); *Allen v. U.S. Steel Corp.,* 665 F.2d 689, 696 (5th Cir. Unit B 1982) (trial court properly ruled that plaintiffs waived claim that was not stated in pretrial conference memorandum).

Nonetheless, despite the fact that the Court was hamstrung by Claimants' late disclosure and did not receive any briefing regarding the proper interpretation of the "subject to forfeiture" language in 18 U.S.C. § 983(d)(3)(A), the Court has considered the Claimants' argument. For the reasons stated below, the Claimants' argument lacks merit.

## B. The Argument Lacks Merit

Claimants argue that their interpretation of the innocent owner defense is supported by the statutory language itself. Claimants contend that the "did not know . . . that the property was subject to forfeiture" language of 18 U.S.C. § 983(d)(3)(A) must be contrasted with the language in the "innocent owner" defense articulated in the nearby statutory provision 18 U.S.C. § 983(d)(2)(A). Subsection (d)(2)(A) provides:

> With respect to a property interest in existence at the time the illegal conduct giving rise to forfeiture took place, the term "innocent owner" means an owner who—
>
> (i) **did not know of the conduct giving rise to forfeiture;** or
>
> (ii) upon learning of the conduct giving rise to the forfeiture, did all that reasonably could be expected under the circumstances to terminate such use of the property.

18 U.S.C. § 983(d)(2)(A) (emphasis added). Claimants argue that where Congress wanted to define the innocent owner defense as hinging upon the claimants' knowledge of the underlying crimes, it did so in subsection (d)(2)(A). By using different language in subsection (d)(3)(A), Claimants argue that the defense under (d)(3)(A) requires something greater (or different) than mere knowledge of the underlying crime—that is, knowledge that the law allows the Government to forfeit the property.

Claimants' argument is resolved by referring to a nearby statutory provision, 18 U.S.C. § 981(a)(1). Section 981(a)(1) provides that: "[t]he following property is *subject to forfeiture* to the United States," and then goes on to recite an extensive list of the types of property that are subject to forfeiture, such as, for example, "[a]ny property, real or personal, involved in a transaction or attempted transaction in violation of section 1956, 1957 or 1960 of this title, or any property traceable to such property." Each of the references of property "subject to forfeiture" under section 981 focuses on the property's involvement (or traceability) to some criminal offense.

In other words, 18 U.S.C. § 981(a)(1) provides a relevant and clear definition of the phrase "subject to forfeiture" for purposes of the Civil Asset Forfeiture Reform Act of 2000, P.L. 106–185, 114 Stat. 202, which added the innocent owner defenses

of 18 U.S.C. § 983(d). In light of § 981(a)(1), the words "subject to forfeiture" in § 983(d)(3)(A) refer to certain types of property that satisfy certain criteria giving rise to forfeiture. An illustration is helpful. If § 981(a)(1)'s definition of "subject to forfeiture" is added in place of the phrase "subject to forfeiture" in the innocent owner defense of § 983(d)(3)(A), the resulting language reads:

> With respect to a property interest acquired after the conduct giving rise to the forfeiture has taken place, the term "innocent owner" means a person who, at the time that person acquired the interest in the property—
>
> > (i) was a bona fide purchaser or seller for value (including a purchaser or seller of goods or services for value); and
> >
> > (ii) did not know and was reasonably without cause to believe that the property was ~~subject to forfeiture~~ [*any property, real or personal, involved in a transaction or attempted transaction in violation of section 1956, 1957 or 1960 of this title, or any property traceable to such property,* **etc.,** as provided by the remainder of 18 U.S.C. § 981(a)(1).].

*See* 18 U.S.C. § 983(d)(3)(A) (emphasis added). In this example, the § 983(d)(3)(A) innocent owner defense requires that the claimant "did not know and was reasonably without cause to believe that the property was ... involved in a transaction or attempted transaction in violation of [various prohibited acts], or any property traceable to such property." Contrary to Claimants' argument, this definition does not require that the purported

innocent owner be ignorant of the forfeiture laws; rather, it requires that the innocent owner be ignorant of *the fact that the property was involved in or traceable to a criminal violation.*[4]

Although the Court has not found any cases expressly addressing the difference in the language between subsections (d)(2)(A) and (d)(3)(A) of Section 981 (and the Claimants have not cited any), the only meaningful explanation for this difference is that each of these subsections seek to address different factual scenarios. As to this point, Claimants' argument overlooks the most critical distinction between subsections (d)(2)(A) and (d)(3)(A) of Section 983—the timing of the property acquisition. The innocent owner defense under (d)(2)(A) applies when the purported innocent owner already possesses a property interest prior to the conduct that gives rise to the forfeiture. In contrast, the innocent owner defense under (d)(3)(A) applies where, as here, the conduct giving rise to forfeiture occurs before the purported innocent owner acquires an interest in the property. In the latter type of case (such as the instant case), to defeat the innocent owner defense, the claimant must know that the property is "subject to forfeiture;" as explained above, this requires knowledge that the property the claimant is about to acquire is *traceable to or was involved in criminal activity.* In the former case, however, if the purported innocent owner knows of the criminal conduct, knowledge that *the property was involved* in such activity can be presumed because the purported innocent owner has control over the property at the time of the criminal act. Thus, in a case where the a claimant already owns a piece of property,

---

**4.** To be clear, the statute giving rise to forfeiture in the case of underlying structuring violations, upon which the Government relies here, is not 18 U.S.C. § 981, but rather 31 U.S.C. § 5317(c)(2). However, Section 5317(c)(2) expressly refers to 18 U.S.C. § 981(a)(1)(A), and like § 981, Section 5317(c)(2) focuses on the connection between the property on the one hand and the underlying criminal act on the other as the basis for forfeiture.

the claimant need only know of the conduct giving rise to forfeiture.

Alternatively, the Government argued that the difference between the language of subsection (d)(2)(A) and (d)(3)(A) is that the latter subsection is broader so as to encompass two types of situations, whereas the former subsection encompasses only a single type of situation. Specifically, **both** subsections prevents a claimant from prevailing on an innocent owner defense if the claimant knew (or should have known) of that the property at issue was used in (or traceable to) criminal conduct; subsection (d)(3)(A) is broader because it **also** prevents a claimant from prevailing on an innocent owner defense if the claimant knew (or should have known) that the government was already in the process of forfeiting the property, **regardless** of whether or not the claimant know or should have known that criminal conduct even occurred or that the property was connected to criminal conduct. In other words, section (d)(3)(A) bars an innocent owner defense even if would-be property owner does not know of the underlying criminal conduct, but is put on notice of a pending forfeiture action at the time of the property acquisition. This approach applies, for example, where a buyer learns of a Notice of Pendency of Action ("Lis Pendens") filed against the property by the Government prior to the purchase. Indeed, several cases fit this mold. *See e.g., United States v. One Residential Property Located at 8110 Mohave Road, Paradise Valley, AZ,* 229 F.Supp.2d 1046 (S.D.Cal. 2002). There, the property owner is put on notice that the property is being forfeited and, in essence, assumes the risk of forfeiture. In such cases, unlike in section (d)(2)(A), it is irrelevant whether or not

the property purchaser knew of the underlying criminal conduct or the criminal conduct's connection to the property.

Without any relevant legislative history or prior case law explaining the differing language between subsections (d)(2)(A) and (d)(3)(A), the Court cannot say for certain that either of these explanations motivated Congress to draft the statutory subsections as it did. That said, it is a standard principle of statutory construction that the Court should interpret a statute in light of the statute's overall structure and its place in the statutory scheme. *United States v. Tabacca,* 924 F.2d 906, 910–11 (9th Cir.1991) (citing *United States v. Schwartz,* 785 F.2d 673, 679 (9th Cir. 1986)) (where the language of a statute is open to varying interpretations, "the structure and purpose of a statute may also provide guidance in determining the plain meaning of its provisions."). Both of these explanations are anchored in the role that subsection (d)(3)(A) plays in the statutory scheme—that is, to address a factually distinct situation where a purported innocent owner purchases a property interest *after* the acts giving rise to forfeiture have occurred. In contrast, the Claimants' position bears no relationship to the purpose of the two subsections. The Claimants merely point out that the language in the two subsections is different, and then postulate that such difference must mean that (d)(3)(A) requires knowledge of the forfeiture laws. However, the Court can find no meaningful reason why Congress would require would-be purchasers of property to be knowledgeable of forfeiture laws, whereas persons who already owned the property at the time the conduct giving rise to the forfeiture would not have to have that knowledge.[5] The Claimant's ex-

---

**5.** Further, given that Section 983(d)(3)(A) is written in terms of an objective standard—i.e., "reasonably without cause to believe"—there appears to be no basis for requiring the innocent owner to have subjective knowledge of the law. *See United States v. 198 Training Field Road,* 2004 WL 1305875, at *3 (D.Mass., June 14, 2004).

planation has no basis in the statutory scheme, nor is it supported by the legislative history. *See* H.R. Rep. 106–192, 1999 WL 406892 (report accompanying 2000 H.R. 1658, enacted by Public Law 106–185, codified at 18 U.S.C. § 983).

Furthermore, none of the cases cited by the Claimants during trial support their conclusion that Section 981(d)(3)(A) requires knowledge of the forfeiture laws. First, *United States v. Cox*, 575 F.3d 352 (4th Cir.2009), does not assist the Claimants because the court in *Cox* simply did *not* decide whether the claimant was an innocent owner of the forfeited assets. Instead, the issue in *Cox* was whether the Government's position in underlying trial that the claimant was not an innocent owner (which the district court rejected) was "substantially justified" so as to preclude an award of attorneys' fees against the Government. *Id.* at 355. The court pointed out that: (1) the claimant knew well before she acquired the subject property through a divorce settlement that her then-husband was under criminal investigation, and (2) that prior to the settlement, the claimant had received a letter from her then-husband's attorney explaining that assets that were going to be distributed in the divorce proceedings were subject to forfeiture and seizure. *Id.* at 356–57. On the basis of this evidence, the court concluded only that the Government's position was reasonable. *Id.* The court did not address whether either of these facts standing alone would have defeated the innocent owner defense.

Similarly, in *Pacheco v. Serendensky*, 393 F.3d 348 (2d Cir.2004), the court was not focused on the innocent owner defense. In *Pacheco*, the issue the court resolved was whether the forfeiture statute allowed the government to forfeit an entire piece of property where the criminal defendant whose acts gave rise to the forfeiture only owned an interest in the property, or alter-

natively, whether the government was limited to forfeiting the defendant's interest. *Id.* at 349. In *Pacheco*, a criminal defendant owned a one-half interest in a residential property with his wife. *Id.* The court concluded that the government could only forfeit the defendant's interest in the property; thus, the lis pendens recorded as to that interest did not prevent a foreclosure sale of the remaining interest (the wife's interest) to a third party. *Id.* at 355–56. The court held, therefore, that at the very least, third party purchaser was a bona fide purchaser of the wife's one-half interest in the property. *Id.* In sum, the ruling in *Pacheco* was not based on whether the third-party purchaser was an innocent owner of the forfeitable interest; instead, the court held that the third-party owned an interest in the property (the wife's interest) that simply could not be forfeited.

In *United States v. BCCI Holdings*, 961 F.Supp. 287 (D.D.C.1997), the court held that the claimant, American Express Bank, was not an innocent owner of assets that it had acquired from defendant BCCI because the undisputed facts demonstrated that the American Express Bank reasonably had cause to believe that the assets were subject to forfeiture. *Id.* at 295–96. In so concluding, the court focused not on whether American Express Bank knew of the forfeiture laws, but rather on whether the it was "aware of BCCI's criminal and fiscal troubles jeopardizing BCCI's assets." *Id.* at 296. The court noted that "BCCI's troubles" were widely reported in New York newspapers in 1990 and 1991, including in over 30 specific news articles cited by the court. *Id.* at 296–300. Given the fact that BCCI's "fraud and corruption were widely reported," the court held that "petitioner's claim that a sophisticated banking entity could reasonably be without cause to believe that BCCI's assets were subject to forfeiture rings hollow." *Id.* at

300. The holding in *BCCI* actually counsels against the Claimant's position here because the court's focus in *BCCI* clearly was on American Express Bank's knowledge of BCCI's criminal activity, not on any knowledge of the forfeiture laws relating to BCCI's crimes.

The final case cited by the Claimants, *United States v. Reckmeyer*, 836 F.2d 200, 204 (4th Cir.1987) does not support the Claimant's statutory interpretation. In *Reckmeyer*, the court held that the claimant, William Reckmeyer, was an innocent owner of a property ("the Orme property") that he had purchased from his son, Christopher. *Id.* at 204. The government sought to forfeit the property as a result of Christopher's conviction under 21 U.S.C. § 848 for conducting a criminal enterprise related to narcotics. *Id.* at 202. The government argued that William was not an innocent owner of the Orme property because, prior to the purchase of the Orme property, William knew that certain property belonging to Christopher's brother, Robert, had been seized by the government. *Id.* at 204. William also knew that the seizure was related to an investigation of both Christopher and Robert. *Id.* Further, William was told by government agents that they were investigating William's financial transactions with his son, and Christopher had told William that the investigations concerned tax problems. *Id.* In response, William testified that he had no knowledge of his sons' involvement with drugs or that any of Christopher's property might be forfeitable. *Id.*

The district court found William's testimony credible and concluded that he was an innocent owner. *Id.* The Fourth Circuit affirmed. *Id.* The appellate court held that "William's admitted knowledge that his sons were under investigation and that some proceeds from the sale of property owned by Robert had been seized" did not compel, as a matter of law, the conclusion that William was reasonably aware of the forfeitability of the Orme property. *Id.* The court reasoned that a reasonable person in William's position "would not necessarily conclude that *all property* owned by Christopher was forfeitable." *Id.* at 204–05 (emphasis added). Therefore, the court upheld the ruling that William was an innocent owner of the Orme property.

*Reckmeyer* does not stand for the proposition that a person is an innocent owner so long as they are reasonably unaware that a forfeiture law exists that allows the government to forfeit property involved in criminal activity. At most, *Reckmeyer* holds that knowledge of a criminal investigation may not be sufficient to rebut an innocent owner defense where the purported innocent owner does not know of any connection between the alleged criminal acts and the property at issue. Again, the court's focus is on whether the purported innocent owner had reason to know of *the connection between the crime and the property*, not on the claimant's knowledge of the law. To analogize this reasoning to the present case, under *Reckmeyer*, the Claimants could be innocent owners if they had no reason to believe that the four properties at issue were purchased at least in part with structured funds. The Court permitted the Claimants to make this argument at trial, however, and the jury necessarily rejected it.

Finally, the court notes that while it has not found *any* cases focusing on the claimants' knowledge of the law when evaluating the innocent owner defense under 18 U.S.C. § 983(d)(3)(A), the court has found several cases supporting the Government's position here—that is, cases in which the claimant's knowledge that the property was involved in criminal activity or purchased with the proceeds of criminal activity defeated the innocent owner defense. *See e.g., United States v. $131,551.03 Plus*

*Accrued Interest from the Sale of 10 Table Bluff Road,* 2010 WL 1135743, *4 (N.D.Cal. March 22, 2010) (claimant was not an innocent owner where she "purchased the property … with full knowledge of the illegal conduct that had occurred at the property"); *United States v. 45 Poquito Road,* No. CV 04–326–MA, 2006 WL 2233645, at *5 (D.Or., Aug. 2, 2006) (innocent owner defense defeated where claimant knew that third-party PAI was engaged in criminal activities at the defendant property and knew that the defendant property was purchased with monies from PAI's fraudulent investment scheme); *United States v. $890,718 in United States Currency,* 433 F.Supp.2d 635, 646 (M.D.N.C.2006) (claimant's admission that he engaged in substantial and continuous drug dealing over an extended period of time precluded a finding that he was reasonably without cause to believe that the $890,718 in currency he had stored at his home was subject to forfeiture); *see also United States v. 198 Training Field Road,* 2004 WL 1305875, at *3 (D.Mass., June 14, 2004) (under an analogous statute, 21 U.S.C. § 853(n), claimant was not an innocent owner of a residential property where the claimant knew prior to the acquisition that her son used the property to facilitate narcotics trafficking and that the government had searched the property and seized drugs on the premises; the fact that claimant subjectively did not know that the law allowed the government to forfeit residential property out of which her son sold drugs was immaterial).

## III. Conclusion

For the reasons stated, the Court rejects the Claimant's argument that under 18 U.S.C. § 981(d)(3)(A), a person is an innocent owner so long as he or she is ignorant of the laws that authorize the Government to forfeit property connected to certain criminal activity. This argument was not timely raised by the Claimants, and it is not supported by the language and purpose of the statutory subsection or the case law.

IT IS SO ORDERED.